788 P.2d 107

**Lynn HAMILTON, an attorney licensed to practice law in the State of Arizona, Plaintiff/Appellant,**

**v.**

**The MUNICIPAL COURT OF THE CITY OF MESA; the Honorable Harold Reeb, a judge thereof, Defendant/Appellee.**

No. 1 CA–CV 88–285.

Court of Appeals of Arizona, Division 1, Department A.

Nov. 16, 1989.

As Corrected Feb. 26, 1990.

Review Denied March 29, 1990.

Burch & Cracchiolo, P.A. by David G. Derickson and William Foreman, Phoenix, for plaintiff/appellant.

Richard M. Gerry, P.C. by Richard M. Gerry, Phoenix, for defendant/appellee.

## OPINION

ROLL, Judge.

Attorney Lynn Hamilton appeals from a superior court judgment in a special action which affirmed her conviction for one count of indirect criminal contempt of court by the Honorable Harold Reeb, Presiding City Magistrate of the City Court of Mesa. Judge Reeb sentenced Hamilton to 120 consecutive hours in jail and imposed a fine of $290 for her failure to appear as defense counsel at the commencement of a city court trial. For the reasons set forth below, we affirm the finding of contempt but vacate that portion of her sentence requiring incarceration.

## FACTS

Lynn Hamilton represented Sharon Snow in a domestic relations matter scheduled for trial on February 4, 1987, at 10:00 a.m. in the southeast judicial district of Maricopa County Superior Court. Hamilton was also scheduled to appear as counsel for Scott Kolsrud in a misdemeanor trial set for February 5, 1987, at 8:30 a.m. in Mesa City Court before Judge Reeb. When Hamilton arrived for the superior court trial on February 4, she was informed that the Snow case had been reassigned to Judge Linda Scott and was reset for 1:30 p.m. Hamilton and opposing counsel met with Judge Scott at 1:30 p.m. and the trial began around 3:30 p.m.

Hamilton had anticipated that the Snow matter would take approximately one hour. When it became apparent that the trial would not be concluded that day, she requested a recess in order to advise the Mesa City Court that she would be unable to appear the next morning for the Kolsrud trial. During the recess, Hamilton called her secretary to request her assistance in calling the city prosecutor and Judge Reeb in order to request a continuance of the Kolsrud trial. Hamilton personally called the city prosecutor's office to speak to Rose Gavin, the assistant city prosecutor assigned to the Kolsrud matter. Hamilton was unable to reach her, but informed Gavin's secretary of Hamilton's conflicting court schedule. Hamilton then called her own secretary back and learned that a member of Judge Reeb's staff had stated that the city prosecutor opposed any motion to continue. Hamilton then made a second unsuccessful attempt to contact the assistant city prosecutor personally because she believed that there must have been a miscommunication.

The Snow trial recessed at approximately 5:15 p.m., whereupon Judge Scott scheduled testimony to resume at 9:00 a.m. the following morning. Hamilton did not inform Judge Scott that she had been unable to get the Kolsrud trial continued.

Hamilton arrived at her office at approximately 8:00 a.m. on February 5, 1987, and dictated a motion to continue the Kolsrud trial. However, Hamilton's secretary did not usually arrive until 8:30 a.m. Hamilton was also unsuccessful in her attempts to reach prosecutor Gavin and Judge Reeb by phone. Hamilton did speak to Judge Reeb's court clerk and stated that she would be compelled to attend the ongoing trial in superior court. Judge Reeb was informed of Hamilton's message.

Judge Reeb directed his clerk to contact Hamilton's office and inform Hamilton that

if she was not in his court by 9:00 a.m., he would hold her in contempt. Hamilton's secretary received this message at approximately 8:30 a.m.

At 8:30 a.m., Judge Reeb took the bench to start the Kolsrud trial. The prosecutor, the civilian witnesses, the jury panel, and defendant Kolsrud were present. Kolsrud was unaware of Hamilton's trial conflict.

Hamilton arrived at superior court at approximately 8:30 a.m., where she met with opposing counsel and the respective clients and tried unsuccessfully to reach a settlement. At approximately 8:45 a.m., Judge Scott called the parties and counsel into chambers to determine whether the matter would be settled. The conference was interrupted by a telephone call from Judge Reeb to Hamilton. Hamilton talked to Judge Reeb in Judge Scott's chambers and explained her prior unsuccessful attempts to contact his court and the prosecutor. She requested that Judge Reeb speak with Judge Scott to reconcile the conflicting trial schedules. Judge Reeb refused to speak to Judge Scott and no resolution was reached during his telephone conversation with Hamilton.

The Snow trial resumed at 9:00 a.m. and was concluded at approximately 10:10 a.m., at which time Hamilton contacted the prosecutor, Gavin. Gavin informed Hamilton that she had requested that Hamilton be held in contempt of court for her failure to appear.

On February 9, 1987, Judge Reeb signed an allegation of indirect criminal contempt and notice of hearing which directed Hamilton to show cause why she should not be held in contempt for "willful disobedience of a lawful court order, to wit: for failure to appear as attorney of record for and in [sic] behalf of the defendant ... on February 5, 1987 at 8:30 a.m. ...."

The Mesa City Prosecutor's office later decided not to prosecute Hamilton. Judge Reeb, however, requested and obtained from the Mesa City Council appointment of a special prosecutor to pursue the contempt charge against Hamilton. Hamilton attempted to disqualify Judge Reeb from hearing the matter by filing a motion for change of judge for cause pursuant to Rule 10.1, Ariz.R.Crim.P., 17 A.R.S. After a hearing on Hamilton's motion, Judge Rebecca Standage ruled that Judge Reeb could preside over Hamilton's criminal contempt trial.

Following a trial, Judge Reeb found Hamilton guilty of indirect criminal contempt of court pursuant to Rule 33, Ariz.R. Crim.P., 17 A.R.S., and scheduled a sentencing hearing.

At the sentencing hearing, three witnesses, including a superior court judge and a city magistrate pro tempore, appeared on Hamilton's behalf. Hamilton spoke on her own behalf. Uncontroverted testimony established that Hamilton is a conscientious and diligent attorney. No evidence was presented that she had ever been dilatory in court appearances or that she had ever been disciplined for unprofessional conduct. The magistrate pro tempore opined that a fine of approximately $200 would cover costs incurred in connection with the calling of the Kolsrud jury. Judge Reeb sentenced Hamilton to serve 120 consecutive hours in jail and to pay a fine of $290.

Hamilton's sentence was stayed by the superior court pending review of Hamilton's special action petition. During the pendency of the special action petition, Hamilton filed a supplemental special action alleging that Judge Reeb was a Utah resident and lacked jurisdiction to enter judgment against her.

The superior court accepted jurisdiction of both the initial and supplemental special action complaints and denied relief. Hamilton filed a notice of appeal to this court.[1]

## ISSUES ON APPEAL

On appeal, Hamilton argues that her conduct was not contumacious and that, in any event, the sentence imposed was impermissibly harsh.

---

1. Hamilton has not appealed the superior court's denial of relief regarding the supplemental special action.

When a special action initiated in superior court is appealed to this court, we must conduct a bifurcated review to consider first, the superior court's acceptance or refusal of jurisdiction, and second, its decision on the merits. *Bilagody v. Thorneycroft*, 125 Ariz. 88, 92, 607 P.2d 965, 969 (App.1979). In the instant case, the superior court accepted the special action jurisdiction and neither party contends that the trial court abused its discretion in so doing. Accordingly, we consider only the court's decision to deny relief.

In reviewing a trial court's decision to grant or deny special action relief, this court does not sit *de novo*. We do not determine whether this court would have granted special action relief, but rather whether the superior court abused its discretion. *Arizona Corporation Commission v. Pacific Motor Trucking Co.*, 97 Ariz. 157, 160, 398 P.2d 114, 116 (1964).

### Indirect Criminal Contempt

Criminal contempt is defined as follows:

Any person who wilfully disobeys a lawful writ, process, order, or judgment of a court by doing or not doing an act or thing forbidden or required, or who engages in any other wilfully contumacious conduct which obstructs the administration of justice, or which lessens the dignity and authority of the court, may be held in contempt of court.

Rule 33.1, Ariz.R.Crim.P., 17 A.R.S. Indirect contempt occurs outside the presence of the court. *Ong Hing v. Thurston*, 101 Ariz. 92, 98, 416 P.2d 416, 422 (1966).

Failure of counsel to be present in court as required by the court may constitute both a breach of professional duty and a disruption of the judicial process punishable as criminal contempt. *In re Siracusa*, 458 A.2d 408, 410 (D.C.App.1983). However, defendant's acts must be wilful in order to constitute criminal contempt. *Riley v. Superior Court*, 124 Ariz. 498, 499, 605 P.2d 900, 901 (App.1979). Noncompliance with a court order to appear at a given time is not in itself criminal contempt unless the failure to appear was wilful.

See *In re Siracusa*, 458 A.2d at 410; *McMullin v. Sulgrove*, 459 S.W.2d 383, 386 (Mo.1970). *See generally* Annot., *Attorney's Failure to Attend Court or Tardiness as Contempt*, 13 A.L.R. 4th 122, 129–42 (1983). The superior court's finding that sufficient evidence supported Judge Reeb's decision that Hamilton wilfully disobeyed his orders must be affirmed absent abuse of discretion.

The superior court determined that the evidence supported a finding that Hamilton knew she was ordered to appear in Judge Reeb's court at 8:30 a.m. and that she was not required to appear in Judge Scott's court until 9:00 a.m. The court further found that she wilfully substituted her judgment as to the priorities in handling non-conflicting court matters. In doing so she chose not to appear in Judge Reeb's court at 8:30 a.m. or to take further reasonable steps to resolve her problem.

The record before the superior court included substantial direct and circumstantial evidence presented to Judge Reeb that Hamilton knew that she had an order to appear at 8:30 a.m. in Judge Reeb's court. Although she testified that Judge Scott had ordered counsel to be at superior court at 8:30 a.m. prior to the 9:00 a.m. resumption of the Snow trial, there was no corroborating evidence from Judge Scott or the opposing counsel in that case. The trial court is not bound to accept as true the uncontroverted testimony of an interested party. *Aries v. Palmer Johnson, Inc.*, 153 Ariz. 250, 261, 735 P.2d 1373, 1384 (App.1987). Testimony established that it was a 10- to 15–minute drive from Mesa City Court to the southeast judicial district court where the Snow trial was conducted. Thus, it is possible to conclude that there was no direct conflict between Judge Reeb's and Judge Scott's orders to appear.

The special prosecutor argues that wilfulness was demonstrated because Hamilton did not appear in person before Judge Reeb, did not obtain substitute counsel, and did not timely file a written motion for a continuance. Hamilton counters that she was required to be in superior court at 8:30 a.m. the morning that the Kolsrud trial was

to commence, she could not have obtained substitute counsel to try the Kolsrud matter on less than 24 hours' notice, and she prepared a motion to continue at the first opportunity.

Hamilton also suggests that because Judge Reeb instructed his secretary to inform Hamilton that if she failed to appear in his court by 9:00 a.m. he would hold her in contempt, she was subject to directly conflicting court orders for 9:00 a.m. We disagree. Judge Reeb found Hamilton in contempt of his order to appear at 8:30 a.m., not in contempt of a "modified order" requiring her to appear at 9:00 a.m.

Hamilton had been informed that the Kolsrud matter was a firm trial setting, both parties were concerned with problems involving the attendance of witnesses, and she was aware that due to his living arrangements, she could not contact her client to inform him of any possible delay in his criminal trial. She did not discuss with Judge Scott the possibility of somehow accomodating her city court conflict. Hamilton also failed to inform Judge Reeb that resumption of testimony in the Snow trial the morning of February 5 would be relatively brief and that the Kolsrud trial could probably be reset for that afternoon.

Were we the trier of fact, we might well conclude that Hamilton's actions constituted merely poor judgment rather than wilfully contumacious conduct. However, our

function is not to weigh the evidence but merely to decide whether substantial evidence exists to support the decision of the trial court. *Pugh v. Cook*, 153 Ariz. 246, 247, 735 P.2d 856, 857 (App.1987). We find that the superior court did not abuse its discretion in finding sufficient evidence to affirm the conviction.

### Excessive Sentence

■ Hamilton also contends that it was an abuse of discretion for the superior court to refuse to set aside the sentence. She points out that evidence during her mitigation hearing established that she is an attorney of high esteem and well-regarded within the legal community. Also, there was no evidence to indicate that she had ever missed a court appearance or failed to follow a court order. Hamilton argues that when viewed in conjunction with the scheduling conflict confronting her, the sentence of incarceration is unjustified.

In addition to evidence that was presented to mitigate the sentence, the city court also had the opportunity to observe Hamilton's demeanor during the proceeding and to assess whether she was remorseful for her conduct. It is clear from the record that Judge Reeb took into consideration Hamilton's intemperate statement during the sentencing hearing.[2] The court appar-

---

2. "... I feel that this entire contempt matter is a matter designed by yourself, not so much aimed at me as my former husband, Lowell Hamilton. I believe you orchestrated this deliberately to cause embarrassment to him and embarrassment to myself. In this particular matter, I believe that there has been ethical misconduct in the way this case was handled. I believe there has been ethical misconduct in the fact that you hired your own attorney to prosecute me, and that that attorney then failed to exercise—then failed to exercise independent judgment to determine a just and appropriate handling of this charge and to see that justice is done as required by the Canons of Ethics. I believe you directed him at every step of the way, and you told him what to do, and he failed to exercise independent professional judgment in this matter. I believe in this matter that it was brought to your attention through motion practice that Mr. Gerry could not serve as a prosecutor in this case. You chose to ignore former ethics opinions

directly on point.... You have again chosen to ignore that. I consider that ethical misconduct which establishes in my mind the bias you have against me, and that I did not get a fair trial in this matter. Lastly, I believe that any inconvenience that was caused to the court was slight. I believe that any inconvenience that was caused to the court by myself was adequately handled when I returned the next day and apologized to you personally, and said I was very sorry for any inconvenience that may have occurred in this matter. You rejected my apology and instead you proceeded in this manner. I have seen on numerous occasions in this court other attorneys come here and announce that they were unprepared after numerous, numerous trial settings, and you have never handled any other attorney in a manner that you have handled my case. I have never seen you zing shall we say another attorney for similar conduct. I have seen much grosser misconduct before you and I have seen you dismiss it lightly as if

ently concluded that Hamilton did not regret her conduct and that she was unwilling to recognize that her actions were disruptive of the court's business.

[redacted] Criminal contempt may be punished by imprisonment not longer than six months, a fine not greater than $300, or both, unless the defendant has been found guilty of contempt by a jury or has waived the right to a trial by jury. Rule 33.4, Ariz.R.Crim.P., 17 A.R.S. Sentencing is within the sound discretion of the trial court and will not be modified or reduced absent an abuse of that discretion. *State v. Day,* 148 Ariz. 490, 498–99, 715 P.2d 743, 751 (1986). This court has authority to reduce a sentence if, under the circumstances of the case, the punishment imposed is excessive. A.R.S. § 13–4037(B); *State v. Bandy,* 3 Ariz.App. 456, 457, 415 P.2d 470, 471 (1966). The power to reduce the sentence under § 13–4037(B) has been used with great caution and is only exercised when it clearly appears that the sentence is too severe. *State v. Stanley,* 123 Ariz. 95, 107, 597 P.2d 998, 1010 (App. 1979). In reviewing the severity of the punishment, this court examines the circumstances of the offense charged and the moral character and past conduct of the defendant. *Id. See also State v. Mulalley,* 127 Ariz. 92, 96, 618 P.2d 586, 590 (1980) *overruled on other grounds, State v. Noble,* 152 Ariz. 284, 731 P.2d 1228 (1987) (evaluating the proportionality of a criminal sanction).

Our review of how Arizona and other jurisdictions have punished attorneys who failed to appear for court hearings indicates that most jurisdictions have consistently levied only fines for such conduct. Only courts in California, Texas, and Illinois have incarcerated attorneys, and then only under circumstances more egregious than in the instant case.

The facts of several Arizona cases are instructive. In *Haggard v. Superior Court of Maricopa County,* 26 Ariz.App. 162, 547 P.2d 14 (1976), an attorney failed to appear for pretrial hearings on a pending criminal prosecution and was fined. In *Rogers v. Superior Court of Pima County,* 4 Ariz.App. 170, 418 P.2d 416 (1966), an attorney failed to appear at a court hearing and was fined $100. In *Van Baalen v. Superior Court of Maricopa County,* 19 Ariz.App. 512, 508 P.2d 771 (1973), an attorney failed to appear at the jury trial in a criminal case and was fined $312. These cases are consistent with sentences imposed by most jurisdictions. *E.g., United States v. Smith,* 436 F.2d 1130 (9th Cir. 1970) ($2000 fine; attorney lied to the court regarding his failure to appear; endangered client's right to appeal); *In re Shorter,* 236 A.2d 318 (D.C.1967) ($50 fine or one day; attorney excused to attend another court for few hours; never returned); *Appeal of Gregory,* 387 A.2d 720 (D.C.1978) ($100 fine, three-day suspended sentence; after trial was continued at attorney's request attorney arrived two and one-half hours late because he was tending to personal matters); *In re Evans,* 450 A.2d 443 (D.C.1982) ($300 fine; attorney failed to appear on three occasions for scheduled court appearances); *Pashley v. State,* 168 Ga.App. 813, 310 S.E.2d 566 (1983) (suspended fine; attorney failed to appear when case called; never contacted court); *People v. Adam,* 15 Ill.App.3d 669, 304 N.E.2d 711 (1973) ($100 fine; attorney failed to appear for trial; the attorney was involved in another trial in same building but never contacted the court regarding the conflict); *Murphy v. State,* 46 Md.App. 138, 416 A.2d 748 (1980) ($1000 fine; attorney failed to appear at pretrial and at trial; notified court of a conflict 40 minutes before trial but had known of conflict for several days); *In re Yengo,* 84 N.J. 111, 417 A.2d 533 (1980), *cert. denied,* 449 U.S.

it were nothing. This also substantiates my belief that what you're doing here is not so much directed at me as it is my former husband. On prior occasions, you have solicited my opinion trying to get me to bad mouth my former husband who is the city prosecutor and I would not do that. Mr. Hamilton and I, although we are divorced, share a mutual respect for one another, a respect that I stand by today, and I will not bad mouth him just because you don't like him. I think all things considered, that this has cost everyone in this case quite a bit, and I don't think any penalty is appropriate."

1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981) ($500 fine; attorney left in the middle of trial to attend to other business in Bermuda); *Commonwealth v. Marcone,* 487 Pa. 572, 410 A.2d 759 (1980) ($400 fine; attorney missed weekly call at criminal trial list; had prior no shows and prior discipline).

Only California, Illinois, and Texas courts have affirmed incarceration of an attorney for contempt of court. *Lyons v. Superior Court of Los Angeles County,* 43 Cal.2d 755, 278 P.2d 681, *cert. denied,* 350 U.S. 876, 76 S.Ct. 121, 100 L.Ed. 774 (1955) (an attorney was sentenced to five days' incarceration when he returned late to a criminal trial because he had fallen asleep in his office); *People v. McDonnell,* 377 Ill. 568, 37 N.E.2d 159 (1941) (an attorney received a $25 fine and a five-day sentence when, in the middle of a trial he was excused for another matter, then failed to return to the trial); *Ex Parte Murphy,* 669 S.W.2d 320 (Tex.Crim.App.1983), *cert. denied,* 469 U.S. 823, 105 S.Ct. 99, 83 L.Ed.2d 44 (1984) ($450 fine and one day sentence; attorney failed to show for pretrial and trial; no excuse offered). *See also In re Karpf,* 10 Cal.App.3d 355, 88 Cal.Rptr. 895 (2d Dist.1970); *Vaughn v. Municipal Court of Los Angeles Judicial District,* 252 Cal.App.2d 348, 60 Cal.Rptr. 575 (1967), *cert. denied,* 393 U.S. 856, 89 S.Ct. 125, 21 L.Ed.2d 126 (1968); *Arthur v. Superior Court of Los Angeles County,* 62 Cal.2d 404, 398 P.2d 777, 42 Cal.Rptr. 441 (1965).

We conclude that a sentence for indirect criminal contempt requiring an attorney to be incarcerated 120 consecutive hours is excessive where, as here, the lawyer has an unblemished professional record, has been found in contempt as a result of a perceived scheduling conflict, and has been required to pay a fine commensurate with court administration costs incurred.

We affirm the conviction and imposition of a $290 fine but modify the sentence by vacating the incarceration portion.

CONTRERAS, P.J., and SHELLEY, J., concur.

Note: The Honorable JOHN M. ROLL, Court of Appeals, Division Two, was autho-rized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 3.