953 P.2d 904

The ARIZONA STATE BOARD OF RE-GENTS on Behalf of ARIZONA STATE UNIVERSITY, Television Station Kaet, Charles Allen, Beth Vershure and Michael Wong, Plaintiffs–Appellees,

v.

The ARIZONA STATE PERSONNEL BOARD; Anna Foster, Judy Barrett, Bill Bonnell, Hank Suverkrup, and Bill Delong in their official capacity as Members of The Personnel Board, Defendants,

Camille Kimball, Defendant–Appellant.

No. 1 CA–CV 95–0478.

Court of Appeals of Arizona, Division 1, Department B.

Oct. 8, 1996.

Reconsideration Denied April 10, 1998.

Arizona State University Office of General Counsel by Paul J. Ward, Mary C. Stevens, Tempe, and Cohen and Cotton, P.C. by Ronald Jay Cohen, Daniel G. Dowd, Phoenix, for Appellees.

Jeffrey F. Arbetman, Phoenix, for Appellant.

## OPINION

GRANT, Judge.

Appellant Camille Kimball ("Kimball") challenges the trial court's ruling that the Arizona State Personnel Board ("Personnel Board") does not have jurisdiction over her whistleblower complaint and that the Arizona State University employee grievance procedure provides the only forum for her complaint. We affirm.

## FACTS AND PROCEDURAL HISTORY

Kimball filed a complaint with the Personnel Board alleging reprisal pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 38-531 ("The Whistleblower Act"). Kimball is employed as a producer and writer at KAET television station, a department of Arizona State University ("ASU"). In May 1994, Kimball filed an Employment Information Form with the United States Department of Labor. On the form, Kimball asserted that although KAET characterized her as an exempt employee so it did not have to pay her overtime, in fact, she was a nonexempt employee and was entitled to overtime pay.

On December 2, 1994, Kimball filed a "whistleblower" complaint with the Personnel Board. She alleged that ASU, KAET, and KAET supervisors Michael Wong, Beth Vershure, and Charles Allen had committed prohibited personnel practices against her in reprisal for filing the Employment Information Form. She also filed a grievance under ASU Policy and Procedure ("SPP") No. 316, which provides remedies for ASU employees whose supervisors retaliate against them for whistleblowing.

Based on A.R.S. section 38–533 (Supp. 1995), which exempts employees of state universities from statutory whistleblower protections under certain conditions, ASU moved to dismiss Kimball's complaint before the Personnel Board. A hearing officer for the Personnel Board heard oral argument and then recommended that the complaint be dismissed because the Personnel Board did not have jurisdiction to hear an ASU employee's whistleblower complaint since the university had its own whistleblower protection policy.

The Personnel Board rejected its hearing officer's recommendation, denied ASU's motion to dismiss, and set Kimball's complaint for hearing. The Arizona Board of Regents, on behalf of ASU, KAET, and the named KAET supervisors (collectively "ASU"), filed a complaint for special action in the superior court to challenge the Personnel Board's ruling. Arguing that A.R.S. section 38–533 exempted whistleblower complaints by university employees from Personnel Board jurisdiction, and that Article 11, Sections 2 and 5 of the Arizona Constitution also prohibited the Personnel Board from exercising jurisdiction over Kimball's complaint, ASU sought an order directing the Personnel Board to dismiss her complaint for lack of jurisdiction.

The Personnel Board and Kimball argued that ASU did not meet criteria under A.R.S. section 38–533 for an exemption from the whistleblower law because the protections under ASU's policy were not equivalent to those in the statute. They further asserted that the constitutional provisions did not preclude the legislature from passing laws regulating employees of universities. In addition,

Kimball argued that ASU's grievance procedures in SPP 316 and SPP 902 did not afford her adequate due process.

The superior court accepted jurisdiction over ASU's special action. The court found that Arizona whistleblower statutes did not require the Board of Regents and universities to duplicate the statutes in their own policies and that ASU's SPP 316 provided adequate protection to whistleblowers. Finding that ASU's grievance procedure on its face provided sufficient due process protections, the court declined to consider Kimball's due process claims because they were not ripe for adjudication. The court noted that Kimball had an adequate remedy at law by appeal to the superior court if she ultimately believed her grievance before ASU was handled arbitrarily, capriciously, or unlawfully.

The court remanded the matter to the Personnel Board with instructions to dismiss Kimball's whistleblower complaint. The court ordered ASU to proceed with hearing Kimball's grievance pursuant to its policies and procedures, unless Kimball elected to withdraw her grievance.

Kimball timely appealed from the superior court judgment. We have jurisdiction pursuant to A.R.S. section 12–2101(B).

## ISSUES

A. What standard of review must this court apply to the trial court's ruling?

B. Is ASU exempt from the Whistleblower Act?

C. Does ASU's grievance procedure meet statutory requirements?

D. Was the due process issue ripe for adjudication?

## DISCUSSION

### A. Standard of Review

■ ASU states that the trial court's decision to grant special action relief is reviewed under the abuse of discretion standard, citing *Hamilton v. Municipal Court of Mesa,* 163 Ariz. 374, 377, 788 P.2d 107, 110 (App.1989). We agree. However, we do not apply that

standard here because Kimball has not challenged the superior court's acceptance of jurisdiction over the special action.

■ *Hamilton* also applied abuse of discretion review to the superior court's decision to deny special action relief. *Id.* In *Hamilton,* the special action proceedings required the superior court to consider the evidence and whether the contempt penalty imposed by a city magistrate was impermissibly harsh. In contrast, the trial court did not consider factual evidence, but instead examined and interpreted Arizona statutes and university policies. Because the interpretation of Arizona statutes involves legal rather than factual questions, our review is *de novo. Libra Group, Inc. v. State,* 167 Ariz. 176, 179, 805 P.2d 409, 412 (App.1991).

## B. Is ASU Exempt from the Whistleblower Act?

First, Kimball argues the trial court erred in holding that ASU is exempt from the Whistleblower Act. She asserts that ASU's grievance policy SPP 316 covers a substantially narrower range of personnel actions than A.R.S. section 38–531(3), and thus fails to meet the minimum requirements imposed by statute.

Title 38, Article 9 of the Arizona statutes concerns "Disclosure of Information by Public Employees." Within Article 9, A.R.S. section 38–532(A) provides:

[i]t is a prohibited personnel practice for an employee who has control over personnel actions to take reprisal against an employee for a disclosure of information of a matter of public concern by the employee to a public body which the employee reasonably believes evidences:

1. A violation of any law.

2. Mismanagement, a gross waste of monies or an abuse of authority.

If a current or former employee believes a personnel action taken against him or her resulted from a disclosure of information covered by section 38–532, the employee may make a complaint to the appropriate independent personnel board. A.R.S. § 38–532(H).

A.R.S. section 38–533 provides:

This article [Article 9] does not apply to an employee or former employee of a state university or the board of regents which has in effect at the time a personnel action is taken against the employee a rule or provision for the protection of its employees from reprisal for the disclosure of information to a public body, except that the employee or former employee may appeal the final administrative decision to the superior court as provided in title 12, chapter 7, article 6.

Kimball does not dispute that ASU had a whistleblower protection policy in effect at the time allegedly retaliatory personnel actions were taken against her. She believes, however, that the policy is inadequate as compared to the protections afforded by A.R.S. section 38–532. Specifically, she argues she would be prejudiced by application of the ASU policy rather than the statute because the statutory definition of "personnel action" covers all actions taken against her while the ASU policy (SPP 316) does not.

In A.R.S. section 38–531(3)(a–l), "personnel action" is defined to include appointment; promotion; disciplinary or corrective action; detail, transfer, or reassignment; suspension, demotion or dismissal; reinstatement; restoration; reemployment; performance evaluation; decision concerning pay, benefits or awards; elimination of the employee's position without a reduction in force by reason of lack of monies or work; and other significant change in duties or responsibilities which is inconsistent with the employee's salary or grade level.

ASU's policy, SPP 316, prohibits supervisory personnel from taking adverse personnel actions against employees who report alleged wrongful conduct. The policy lists the following as "adverse personnel actions": termination of employment; demotion with salary reduction; imposition of suspension without pay; filing of a written reprimand; failure to promote; filing of a negative performance evaluation; withholding of appropriate salary adjustments; imposition of involuntary transfer or reassignment; elimination of the staff member's position absent a reduction in force; reor-

ganization; or a decrease in or lack of sufficient funding, monies, or work load.

■ Nothing in A.R.S. section 38–533 requires a state university or board of regents to adopt a policy identical or equivalent to the whistleblower statutes in order to claim the exemption of A.R.S. section 38–533. The exemption applies if the university has in effect "a rule or provision for the protection of its employees from reprisal for the disclosure of information to a public body."

■ We will not construe a statute to require something not within the plain intention of the legislature as expressed by the statute itself. *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133, 407 P.2d 91, 93 (1965); *Lewis v. Pleasant Country, Ltd.*, 173 Ariz. 186, 195, 840 P.2d 1051, 1060 (App.1992). If the legislature had intended to require state universities to adopt the same provisions as the whistleblower statutes in order to claim the exemption, it could have said so in the statute. *See Lewis*, 173 Ariz. at 195, 840 P.2d at 1060. As it did not do so, we conclude ASU's whistleblower policy need not be the same as the statutes to entitle ASU to claim the section 38–533 exemption.

■ Kimball also argues the statutory definition of personnel actions should be regarded as a minimum for ASU's policy; she contends SPP 316 does not meet this minimum. Again, however, if the legislature had intended the statute to be the minimum standard for a whistleblower policy adopted by a university, it could have provided for this standard in the statutes. Because it did not do so, we will not view the statute as setting forth a minimum definition of personnel actions.

In any event, the definitions of "personnel action" definitions in A.R.S. section 38–531(3) and SPP 316 are substantially similar. Some of the differences in the definitions are attributable to semantics. The statute uses "personnel action" to include actions such as appointment, reinstatement, restoration, and reemployment, which are not adverse actions. SPP 316 defines "adverse personnel actions" and lists only unfavorable actions.

■ ASU's policy includes "filing of a written reprimand," which A.R.S. section 38–531(3) does not include. A.R.S. section 38–531(3) contains two catch-all provisions that are not included in SPP 316: "disciplinary or corrective action" and "other significant change in duties or responsibilities which is inconsistent with the employee's salary or grade level." The lack of these catch-all phrases in SPP 316 does not make ASU's policy inadequate to protect whistleblowers. The legislature has nowhere indicated that universities must protect whistleblowers from every type of adverse personnel action possible. ASU has adopted a policy that protects employees from the most severe adverse actions as well as most other unfavorable actions that could be taken in retaliation against a whistleblower. These protections are clearly sufficient to entitle ASU to be exempt from the statutory whistleblower provisions, including exemption from the jurisdiction of the Personnel Board.

ASU argues that Article 11, Sections 2 and 5 of the Arizona Constitution prohibit the Personnel Board from exercising jurisdiction over Kimball's complaint. Because we conclude A.R.S. section 38–533 exempts ASU from Personnel Board jurisdiction over the whistleblower complaint, we need not resolve ASU's constitutional argument.

**C. Does ASU's Grievance Procedure Meet Statutory Requirements?**

Kimball argues ASU's grievance procedure, SPP 902, violates two procedural provisions of Arizona's Administrative Procedure Act (APA), A.R.S. sections 41–1001–1006. First, she contends that ASU's rule that an employee's attorney is advisory only and may not participate in the grievance hearing violates A.R.S. section 41–1062(A)(1), which provides that every party to an administrative proceeding shall have the right to be represented by counsel. Second, Kimball argues that the grievance hearing officer's inability to issue subpoenas to compel the attendance of witnesses or the production of documents violates A.R.S. section 41–1062(A)(4), which provides that the hearing officer may cause subpoenas to be issued for the attendance of

witnesses and production of documents and other evidence.

■ In response, ASU first argues we should not consider the application of the APA because Kimball has raised this issue for the first time on appeal. We note, however, that Kimball raised this issue below by way of a citation of additional authority in which she pointed out that article 6 of the APA applies to ASU's whistleblower hearing procedure, and that A.R.S. section 41–1062(A)(3) and (4) requires that a party to adjudicative proceedings be entitled to representation by counsel and to subpoena witnesses and production of documents. Although Kimball raised this issue in a cursory manner, we find it was sufficiently before the trial court to allow us to consider the issue on appeal.

The APA applies to boards, commissions, departments, officers and other administrative units of the state. A.R.S. § 41–1001(2) (Supp.1995); A.R.S. § 41–1002 (1992). Articles 2, 3, 4 and 5 of the APA do not apply to the Board of Regents and the institutions under its jurisdiction. A.R.S. § 41–1005(D). The implication of these specific exemptions is that article 6, which contains A.R.S. section 41–1062, does apply to the Board of Regents and ASU.

ASU argues that Article 11, Sections 2 and 5 of the Arizona Constitution vest the Board of Regents with plenary authority over ASU employees, and that requiring ASU to follow A.R.S. sections 41–1061–1066 would illegally undermine that authority. Article 11, Section 2 provides:

> The general conduct and supervision of the public school system shall be vested in a State Board of Education, a State Superintendent of Public Instruction, county school superintendents and such governing boards for the State institutions as may be provided by law.

Article 11, Section 5 provides for the appointment of university regents.

■ Civil service laws may not infringe upon the Board of Regents' constitutional power to supervise its employees. *Arizona Bd. of Regents v. State Dep't. of Admin.*, 151 Ariz. 450, 451, 728 P.2d 669, 670 (App.1986).

Thus, neither university employees nor employees of the Board of Regents are subject to Arizona's civil service system. *Id.; Hernandez v. Frohmiller*, 68 Ariz. 242, 251, 204 P.2d 854, 860 (1949). *Cf. McDonald v. Campbell*, 169 Ariz. 478, 821 P.2d 139 (1991) (statutes vesting Personnel Board with power to enforce whistleblowing statutes to protect Arizona Supreme Court employees were unconstitutional encroachment on powers granted to supreme court).

■ Here, however, we are dealing with procedural rules for administrative hearings, not with the power of the Board of Regents to supervise its employees. In any event, as we next discuss, the Board of Regents may, as it has done, make its own rules of procedure for grievance hearings. Therefore, application of the procedures of A.R.S. sections 41–1061–1066 to ASU does not violate the constitutional powers of the Board of Regents.

In introducing the procedural rules for contested administrative cases, A.R.S. section 41–1062(A) provides that the rules shall apply "unless otherwise provided by law." The definition of "provision of law" includes the rule of an administrative agency. A.R.S. § 41–1001(16). " 'Rule' means an agency statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of an agency." A.R.S. § 41–1001(18).

Under these definitions, ASU has otherwise provided by law for procedures involving representation by counsel in grievance hearings and attendance of witnesses and production of documents. SPP 902 provides that prior to the grievance hearing, either party may receive the advice of counsel, who may be an attorney. The attorney may be present and act as an advisor during the hearing. However, attorneys may not participate in or provide testimony during the hearing. ASU may not have a legal advisor unless the grievant has a legal advisor.

As to subpoenas, the ASU staff grievance hearing procedures ·established pursuant to SPP 902 provide that neither the American Arbitration Association (AAA), which admin-

isters grievances for ASU, nor the hearing officer, has subpoena authority to compel the attendance of witnesses or production of documents. However, witnesses who are employees of ASU are "strongly encouraged" to provide testimony if the hearing officer determines their testimony is relevant to the dispute. If ASU is in control or possession of documents that the hearing officer deems to be relevant, ASU will cooperate in producing available documents if other parties are unable to do so, as long as the documents are not confidential or are otherwise not subject to disclosure.

These policies and rules adopted by ASU for its grievance hearings are to be used rather than the conflicting provisions of A.R.S. sections 41–1062(A)(1) and (4). As the statute allows for the provision of other procedures, we conclude that ASU's grievance procedure does not violate statutory requirements.

## D. Was the Due Process Issue Ripe for Adjudication?

Kimball argued below that her due process rights would be violated if she were compelled to use ASU's grievance procedures to resolve her whistleblower complaint because the tribunal was not impartial and because her attorney could not participate in the hearing. Specifically, she believes that the university vice president who would make the final decision after receiving the recommendation of the independent hearing officer would not be able to render an impartial decision because he supervises the person against whom the allegations of reprisal were lodged.

The superior court noted that ASU's general grievance procedure was entitled to a presumption of validity and that it appeared on its face to afford an aggrieved party adequate due process protections; the court would not presume that ASU would misinterpret or fail to follow its own rules and regula-

tions or that it would apply them improperly in Kimball's grievance hearing. Accordingly, the court declined to consider Kimball's due process claims because they were not ripe for adjudication.

We agree with the superior court. We see nothing in the grievance procedure that offends due process requirements.[1] The hearing officer will be an AAA hearing officer chosen by the parties. Kimball's belief that the vice president who will make the ultimate decision is not impartial is pure speculation.

As to her charge that due process is violated because of the restrictions on representation by counsel, she cites only *Arizona State Department of Public Welfare v. Barlow*, 80 Ariz. 249, 296 P.2d 298 (1956). In *Barlow*, parents whose children had been taken from them and placed in the custody of the state were denied representation of counsel at the hearing to determine whether the parents could secure custody of their children. *Id.* at 251, 296 P.2d at 299. The court held that denial of the right to effective participation of counsel constituted a denial of due process of law. *Id.* at 253, 296 P.2d at 300. *Barlow*, however, concerned a court hearing; we are concerned with an administrative grievance hearing. Kimball's attorney may advise her at the hearing, even though he may not directly participate. We do not believe this level of participation offends due process at the administrative hearing, particularly where ASU also cannot be represented by an attorney at the hearing. Thus, on its face, this procedure does not violate due process.

Whether any due process violations occur cannot be known until the grievance process is completed. Kimball may receive the relief she seeks; thus, any pre-hearing speculation about the process that might be afforded her would be inconsequential. As the trial court noted, if the outcome is not what she seeks, she may appeal to the superior court if she believes her grievance was arbitrarily, capri-

---

1. *But see, R.L. Augustine Const. v. Peoria School Dist. No. 11*, 183 Ariz. 393, 904 P.2d 462 (App. 1995), Review granted (Oct. 24, 1995) (A governmental entity may not adjudicate cases in which it has, by virtue of its official, statutory duties, a pecuniary interest in the outcome and constitu-

tional infirmities in the hearing process would not be cured by parties' right to appeal to superior court, since review would not be *de novo*.) The parties in this case did not brief *R.L. Augustine*.

ciously, or unlawfully handled. Accordingly, we affirm the trial court.

ASU requests an award of attorneys' fees pursuant to A.R.S. section 12–341.01 because this action arises out of an employment contract. In our discretion, we deny this request.

EHRLICH and VOSS, JJ., concur.