[Crim. No. 8337. Third Dist. May 13, 1976.]

In re RUDY RICHARD FLORES on Habeas Corpus.

## COUNSEL

Rudy Richard Flores, in pro. per., and Peter Heintz, under appointment by the Court of Appeal, for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi and Willard F. Jones, Deputy Attorneys General, for Respondent.

## OPINION

**PARAS, J.**—Petitioner seeks a writ of habeas corpus, alleging that the requirement that he serve a minimum of 10 years in prison without possibility of parole for the crime of sale of heroin to a minor, with one

prior felony narcotic conviction (Health & Saf. Code, § 11502—now § 11353), is cruel and unusual punishment. (Cal. Const., art. I, § 17.)[1]

Ruben Venegas, a 17-year-old minor, together with Alfonso Vitella, Jr., and another companion, burglarized a home in Sacramento County on February 26, 1970. They took the stolen property to petitioner's home in Yolo County, where Venegas became acquainted with petitioner. Petitioner and Raymond Hernandez bought the property from the burglars, paying for it with money and heroin.[2] Petitioner originally had the heroin; he passed it to Hernandez, who divided it into halves and handed one-half to the burglars; they then went to the home of Vitella, where they injected the heroin into their arms. It was Venegas' first experience with the drug; he felt its effects immediately, and became tired, ill and nauseous. On February 28, 1970, Venegas was arrested by Sacramento County officers for the burglary. He was then on probation as a ward of the Yolo County court. In a consultation with Yolo and Sacramento County officers, he agreed to work for the Yolo County Sheriff's office as an undercover narcotic operator.

On March 2, 1970, Venegas, under the surveillance of several officers, went to petitioner's home to attempt a "buy" of heroin. Petitioner told Venegas he was unable to get a balloon of heroin that evening, but asked him to return the next day. The next day Venegas returned and gave petitioner $50. Petitioner told Venegas that he would get the heroin and deliver it personally later, but that if Venegas did not find him at home, petitioner would leave the heroin with Vitella. Venegas subsequently picked up one-half spoon from Vitella, who told Venegas that "Rudy [petitioner] could only give me half and he would get the other half later on today [March 3]." Later that day and in the days that followed, Venegas returned to petitioner's house on several occasions. Each time he contacted petitioner, petitioner said he did not yet have the other half-spoon of heroin, but would get it. The balance of the heroin was never delivered. Petitioner was arrested on May 15, 1970. He was convicted of conspiracy to sell narcotics (Pen. Code, § 182) and of selling a narcotic (heroin) to a minor (Health & Saf. Code, § 11502—now § 11353), with a prior felony narcotic conviction (sale of heroin in 1968). This court affirmed his convictions on February 28, 1972 (3 Crim. 6197) in an unpublished opinion. ■ Although petitioner did not raise the

---

[1]An earlier petition seeking the same relief was denied by us on April 24, 1975. (3 Crim. 8153.) The present petition was filed in the Supreme Court on May 9, 1975. The Supreme Court issued an order to show cause, returnable before this court.

[2]This offense was not charged and is not involved in this appeal.

issue of cruel and unusual punishment in the appeal, the question is nevertheless cognizable on habeas corpus, because he seeks to vindicate a fundamental constitutional right. (*In re Foss* (1974) 10 Cal.3d 910, 916-917 [112 Cal.Rptr. 649, 519 P.2d 1073].)

In *In re Foss, supra,* the Supreme Court struck down a 10-year minimum sentence without parole for selling or furnishing heroin with a prior narcotic felony conviction (Health & Saf. Code, § 11352—formerly § 11501) as cruel and unusual punishment under the standards set forth in *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921]. It is readily apparent, therefore, that the constitutional validity of petitioner's sentence depends primarily, if not entirely, upon the constitutional significance of the fact that the purchaser was a minor. If the minor's status is not significant, this case is controlled by *Foss.* We are persuaded to the contrary, however. A heroin sale to a minor is significantly more culpable than a heroin sale to an adult, thus rendering the 10-year minimum constitutionally appropriate.

*People* v. *Carbonie* (1975) 48 Cal.App.3d 679, 686-689 [121 Cal.Rptr. 831], found ample justification for such a distinction when it upheld a prison sentence including a five-year minimum without parole for a first offense of using a minor to furnish a non-narcotic controlled substance (amphetamines). in violation of Health and Safety Code section 11380. The major difference between sections 11380 and 11353 is in the type of controlled substances proscribed, the former dealing generally with non-narcotics and the latter with narcotics. (*Carbonie, supra,* p. 690.)

The *Carbonie* court distinguished *People* v. *Malloy* (1974) 41 Cal.App.3d 944 [116 Cal.Rptr. 592] (which held § 11379's five-year minimum for sale of LSD with a prior for the same offense to be cruel and unusual punishment under *Foss*) on the ground that higher penalties are justified "to discourage adults from apprenticing minors in the drug trade." (*People* v. *Carbonie, supra,* 48 Cal.App.3d at p. 686.) Discussing the first of the three *Lynch* factors, the nature of the offense and/or the offender, the *Carbonie* court stated: "To begin with, the penalty at issue in *Foss* bordered on a status punishment; that is not true here. Our Supreme Court noted there that addicts often traffic in drugs to support their habits. (10 Cal.3d at p. 923.) The court therefore concluded that a mandatory minimum term of imprisonment constitutes cruel punishment to the extent that it fails to take into account whether a particular seller's behavior is the product of his own drug dependence. (*Id.,* at p. 923.) Here, too, the section 11380 offender may often prove to

be trafficking to support a habit. But a drug habit in no way compels an adult to use minors as agents in his ventures. It is the calculated decision to do so that constitutes the particular vice at which the section is aimed; no comparable justification existed in *Foss.* [Fn. omitted.]

"Second, our Supreme Court noted in *Foss* that there is ample reason to doubt whether addicts can, in fact, be deterred from all drug-related crime. (*Id.,* at p. 925.) The psychological and physiological compulsions attendant to addiction are too great to expect a salutory effect from the simple expedient of imposing mandatory minimum terms across the board, with little concern for the likelihood of success in each particular instance. Nevertheless, even if society cannot hope to discourage *all* drug-related crime, there is no self-evident reason why it cannot hope to discourage adult addicts from dragging minors down with them. The adult addict who cannot be deterred from trafficking in drugs to support his habit may still decide not to involve a minor and to achieve his purpose by other means, provided the penalty for involving a minor is sufficiently severe and certain.

". . . Here, the mandatory minimum term is but a means to the ultimate end of protecting children from those adults who might otherwise be tempted to involve them in drug traffic. Indeed, the need for such a sanction seems particularly acute when we consider the fact that society's policy of leniency toward minors has the unfortunate side effect of making them ideal retail outlets in a narcotics distribution scheme." (*People* v. *Carbonie, supra,* pp. 686-688.)

█ As indicated section 11380 governs substances that are not as dangerous or addictive as heroin. Here, petitioner, who was fully familiar with the dangers of heroin addiction (having been committed to the California Rehabilitation Center after his first offense in 1968), preyed upon a juvenile who had never before used heroin. It is commonly known that much of the high burglary rate is attributable to drug addicts who commit crime to support their habit. Petitioner's knowing purchase of burglarized property with heroin was calculated not only to turn Venegas into an addict, but thereby to cause him to commit more and more crime, to petitioner's continuing advantage. In the hierarchy of baseness of crimes involving drug traffic, the sale or furnishing of drugs to minors ranks at the very top.

We do not find the 10-year minimum cruel or unusual in this case; indeed the only cruelty we detect is that inflicted upon the minor victim when heroin was made available for his use.

We are strengthened in our view by language of the Supreme Court in *In re Adams* (1975) 14 Cal.3d 629 [122 Cal.Rptr. 73, 536 P.2d 473]. The defendant in *Adams* was convicted of selling benzedrine and of five separate transportation counts involving seconal, benzedrine, marijuana, heroin, and pantopon, each of which carried a three-year minimum. The trial court combined the offenses into two groups for sentencing, and ordered the two groups to be served consecutively, giving defendant (a first offender) a six-year minimum before eligibility for parole. A unanimous Supreme Court found this was *not* cruel and unusual punishment, stating: "Our decision in *Foss* rested in part upon our determination that it was improper to punish severely the repetition of a drug offense by persons who might be addicts acting to support their habits. In the instant case, the six-year mandatory minimum term arises by reason of the trial court's discretionary judgment to impose consecutive sentences for separate criminal offenses. The record fails to disclose any abuse of discretion in this regard. (See *People* v. *Giminez*, 14 Cal.3d 68, 71-72 [120 Cal.Rptr. 577, 534 P.2d 65].) Unlike the situation in *Foss*, there is no indication in the present record that petitioner was an addict selling drugs to support his habit. Indeed, the large quantities of drugs transported in the single transaction before us suggest that petitioner may have been a major drug supplier. We decline petitioner's invitation to extend our *Foss* ruling to invalidate consecutive mandatory minimum sentences prescribed for initial drug offenders." (14 Cal.3d at p. 637.)

■ The second branch of the disproportionality test under *Lynch*, *supra*, involves a comparison of the penalties imposed in California for the commission of more serious crimes. We note first of all, that effective January 1, 1976, the Legislature repealed the special minimum parole eligibility dates for possession and sale of controlled substances, Health and Safety Code sections 11350, 11351, 11352, and 11370. (Stats. 1975, ch. 1087.) Significantly, the provisions regarding furnishing or selling to minors were left unchanged. (Health & Saf. Code, §§ 11353, 11380.)

To some extent these repeals merely reflect prior court rulings, following *Foss*, that such provisions are cruel and unusual. (See e.g., *People* v. *Thomas* (1975) 45 Cal.App.3d 749, 760 [119 Cal.Rptr. 739] (15-year minimum under Health & Saf. Code, § 11350 for possession of heroin with two priors held unconstitutional); *People* v. *Vargas* (1975) 53 Cal.App.3d 516 [126 Cal.Rptr. 88] (3-year minimum for furnishing amphetamine under Health & Saf. Code, § 11379 held unconstitutional); *People* v. *Malloy, supra;* but see *In re Adams, supra,* 14 Cal.3d at p. 637;

*People* v. *Waters* (1975) 52 Cal.App.3d 323 [125 Cal.Rptr. 46]; and *People* v. *Serna* (1975) 44 Cal.App.3d 717 [118 Cal.Rptr. 904].)

But whatever the reason for their repeal, they are no longer the law, and thus present a stark contrast to the lengthy minimums retained in sections 11353 and 11380. For example, after *Foss,* and the subsequent repeal of the minimum penalties in Health and Safety Code section 11352, the minimum eligible parole date for furnishing (or selling heroin with a prior is one-third of ten years, or three and one-third years). (Pen. Code, § 3049.) ▮ The Legislature has now spoken in clarion tones; it has informed us that although mindful of and obedient to the *Lynch* and *Foss* rulings, it nonetheless considers the involvement of minors in hard drugs as a crime so foul and vile that it will insist upon a harsh penalty.

We do not disagree. As stated above, the difference in minimum prison time between a section 11353 sentence (10 years) and a section 11352 sentence (3⅓ years), great as it is, is justified as necessary for the protection of minors. Moreover, given the cause-and-effect relationship of heroin addiction to other crimes of theft and violence, and the often premature death of the victims themselves by overdose or suicide, along with the tragic destruction of thousands of young lives, we shall not say that the sale of heroin to a minor is any less serious a crime than many crimes of violence; indeed it possesses the potential to cause the commission of innumerable acts of violence by the newly addicted minor. It is therefore inappropriate, if not impossible, to characterize this offense as "non-violent" for purposes of comparison. Furthermore, since the 10-year minimum is applicable only to recidivists, a proper comparison must take into account the minimum parole eligibility dates for second offenders, including the possibility (as in *Adams, supra,* 14 Cal.3d 629), that the penalty for the second offense will be made to run *consecutively* to the first offense.

The relevant statutes providing for minimum eligible parole dates greater or less than 10 years are set out in *Foss, supra,* 10 Cal.3d at pages 925-927. In light of our comments above, and particularly in regard to the seriousness with which we view the selling of narcotics to minors, we find no disproportionality. Once again, we note that our view is supported by *In re Adams, supra.* If a first offender may suffer a six-year penalty for two offenses of transportation and sale committed at the

same time, we think it not inappropriate to add four more years for selling *to a minor,* with a prior separate felony narcotic conviction.[3]

 The third test of disproportionality requires a comparison of California's penalty with the penalty for the same offense in our sister states. The penalties for first offenses of selling narcotics to a minor for all 50 states and the United States are given in the appendix to the *Carbonie* decision, *supra,* 48 Cal.App.3d at pages 692-697. We have been supplied with similar data for second offenses, which do no more than convince us, as it did the *Carbonie* court, that reasonable Legislatures may differ.

The order to show cause is discharged, and the petition for a writ of habeas corpus is denied.

Janes, Acting P. J., and Evans, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied July 8, 1976.

---

[3]Moreover, in this particular case, as noted earlier (fn. 2, *ante* p. 224), evidence of yet a third uncharged offense of furnishing heroin to a minor was introduced at trial.