792 P.2d 705

STATE of Arizona, Appellee,

v.

Jay Martin JONAS, aka Jay Martin Mecklenburg, Appellant.

No. CR–89–0021–PR.

Supreme Court of Arizona,
En Banc.

April 17, 1990.

Robert K. Corbin, Atty. Gen. by Bruce M. Ferg, Asst. Atty. Gen., Tucson, Vicki Gotkin Adler, Asst. Atty. Gen., Phoenix, for appellee.

Dickerson & Rheinheimer by Timothy B. Dickerson, Sierra Vista, for appellant.

Robert F. Arentz, Cochise County Public Defender by James L. Conlogue, Deputy Public Defender, Bisbee, amicus curiae for Cochise County Public Defender.

Harrison, Harper, Christian & Dichter, P.C. by Stephen M. Dichter, Phoenix, amicus curiae for Arizona Attorneys for Criminal Justice.

## OPINION

CORCORAN, Justice.

Defendant Jay Martin Jonas (defendant) petitions for review of the court of appeals decision affirming his convictions for trafficking in stolen property and transferring marijuana to a minor under the age of 15 years, and his resulting *consecutive* sentences totalling 46 years. We granted review of the following question:

> Under the facts of this case, does the 25–year sentence, imposed consecutively to the other sentence, violate the proscription against cruel and unusual punishment when imposed for the act of selling to a 14–year–old minor one marijuana cigarette for the price of $1.00?

We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.24. For the reasons that follow, we conclude that defendant's sentence does not constitute cruel and unusual punishment under the facts of this case.

## FACTS AND PROCEDURAL BACKGROUND

In late September 1987 the victim, a 14–year–old friend of defendant's younger brother, broke into a lawyer's office and stole, among other things, a Smith & Wesson .357 magnum pistol valued at $350.00. A few weeks later, the victim told defendant, who was then 21 years old, that he had a stolen gun he wanted defendant to sell for him. Defendant took the gun and promised to give the victim money or drugs for it, but told the victim the gun "was very hot and that he had to keep a low profile on it."

During the time period before and after the burglary, the victim twice obtained marijuana from defendant, purchasing one marijuana cigarette for $1.00 each time. Once defendant actually handed the marijuana to the victim in exchange for money; the other time, the victim purchased the drug through defendant's younger brother, who had obtained it from defendant. After the sale that involved defendant personally, defendant smoked the marijuana with his brother and the victim in defendant's yard. The victim had never smoked marijuana in the past, and the experience made him feel dizzy.

In early October the victim spoke to investigating police officers and admitted to the law office burglary, that he had taken

the gun from that office, and that he had committed 3 other burglaries. He also told the police he had given the gun to defendant to sell for him, and that defendant had sold him marijuana. As a result of that investigation, defendant was indicted on 7 counts, including 4 counts of burglary and one count of conspiracy to commit burglary that were later dismissed, as well as the present counts of trafficking in stolen property and sale of marijuana to a minor under 15. The state filed an allegation that defendant had one prior felony conviction for theft.

At trial, the victim testified that defendant had offered to sell the stolen gun and had twice sold him marijuana. Defendant denied that these incidents had ever occurred, but admitted his prior felony conviction for theft. Defendant's younger brother, who was 15 at the time of these incidents, testified that the victim had told him about stealing the gun from a law office, but that he was not present when the victim asked defendant to sell the pistol. Defendant's brother also denied that the incidents involving the marijuana had occurred, although he admitted on cross-examination that he once smoked marijuana with the victim in defendant's yard and that defendant was present and saw them. He also testified that his brother had supplied him with marijuana in the past but had not done so since the burglary.

The investigating officer testified that the victim had cooperated with police throughout the investigation of these incidents, had received no promises in return for the information he gave them about defendant, and had been charged with and pleaded guilty in juvenile court to several counts involving 6 burglaries, as a result of the information he provided.

The jury found defendant guilty of trafficking in stolen property and sale of marijuana to a minor under 15 years old, both class 2 felonies. After the verdict, defendant admitted to his prior conviction after the trial court advised him of the rights he was waiving and the consequences of his admission. The court continued the sentencing hearing to allow time for preparation of a presentence report. Defendant did not request a mitigation hearing. At sentencing, the court imposed *consecutive* aggravated maximum terms of 21 years for trafficking in stolen property and 25 years for transferring marijuana to a minor, and ordered defendant to pay $350.00 in restitution to the owner of the gun. Defendant timely appealed, arguing, among other things, that the 25–year sentence imposed on him for selling marijuana to a minor constituted cruel and unusual punishment proscribed by the eighth and fourteenth amendments to the United States Constitution. The court of appeals affirmed defendant's convictions and sentences. *State v. Jonas*, 162 Ariz. 32, 780 P.2d 1080 (App.1989). Defendant then sought review in this court.

## DISCUSSION

### 1. *Defendant's Sentence*

Defendant challenges the 25–year maximum sentence he received for his conviction of transfer of marijuana to a minor under the age of 15, in violation of A.R.S. § 13–3409. That statute provides, in relevant part:

A. A person shall not knowingly:

. . . .

2. Sell, transfer or offer to sell or transfer to a minor any substance if its possession is prohibited by ... A.R.S. § 13–3405 [which includes marijuana]....

B. A person who violates a provision of this section is guilty of a class 2 felony and is not eligible for suspension or commutation of sentence, probation, pardon, parole, work furlough or release from confinement on any other basis until the sentence imposed by the court has been served, and if the minor is under fifteen years of age it is punishable pursuant to § 13–604.01, subsection A.

A.R.S. § 13–3409. Because the jury found that the minor was under the age of 15 years, the sentencing provisions of A.R.S. § 13–604.01 applied:

A. Except as otherwise provided in this section, a person who is at least eighteen

years of age ... and who stands convicted of a dangerous crime against children in the first degree involving ... using minors in drug offenses shall be sentenced to a presumptive term of imprisonment for twenty years....

    ....

D. The presumptive sentences prescribed in subsections A, B, and C of this section may be increased or decreased by up to five years pursuant to the provisions of § 13–702, subsections C, D and E.

The sentencing provisions of A.R.S. § 13–702 detail the factors the court shall consider in determining whether the sentence imposed shall be aggravated or mitigated. Thus, under these provisions, defendant faced a mandatory *minimum* sentence of 15 years, a *presumptive* term of 20 years, and a *maximum* sentence of 25 years, to be served without possibility of early release. Additionally, any sentence imposed had to be served consecutively to any other sentence imposed on the other count of trafficking in stolen property. *See* A.R.S. § 13–604.01(J).

The court considered the presentence report before imposing sentence. That report indicated that defendant denied committing any crime, and had told the probation officer who prepared the report, "I hope no one that got me in here is around when I get out.... they better not be around." Defendant's adult criminal record included 4 prior felonies in New York and Arizona, including convictions of violent felonies for attempted robbery and assault. Additionally, defendant had numerous misdemeanor convictions in Arizona, including several instances of furnishing alcohol to a minor, disorderly conduct, assault, DUI, and reckless driving. The presentence report evaluation concluded:

Although only twenty-one, the defendant has accumulated a total of six felony convictions since the age of seventeen. He has exhibited a continued pattern of illegal activity and the safety of the public appears at risk when the defendant is at liberty. Attempts to change his behavior through probation (both juvenile and adult), counseling and incarceration have proven useless as the defendant appears unwilling to conform to the rules of society.

Although no violence was involved in the instant offense, his record shows various violent offenses in the past.... His somewhat threatening comments at the time of the presentence investigation, coupled with his past behaviors, may require some consideration in assessing his potential for involvement in further crime. A lengthy incarceration in the Department of Corrections should help insure the safety of the community.

At sentencing, the trial judge noted that his original inclination was to seek reasons to be lenient with defendant so that he could impose a mitigated sentence, but that the presentence report had convinced him to impose the maximum sentence. As aggravating factors, the judge mentioned defendant's extensive prior criminal record "that is rare to find in somebody 21 years of age," involving both violent felonies and a history of crimes involving children. The court also pointed out that both of the crimes for which defendant was being sentenced involved assisting juveniles in criminal acts, and that defendant's record "in and of itself shows shockingly aggravating circumstances." Furthermore, the presentence report indicated that defendant had threatened to harm those involved in the prosecution of this case after his release. This factor, said the judge, "is the most shockingly and seriously important reason for putting you behind bars as long as the law will permit me to do it." The complete text of the comments by the trial court at sentencing is attached as an Appendix.

The trial court then imposed the maximum sentence of 25 years for the drug offense involving the minor, to be served consecutively to the maximum aggravated sentence of 21 years for trafficking in stolen property.[1]

---

1. Defendant's sentence of 21 years for trafficking in stolen property was enhanced by his prior conviction for theft. *See* A.R.S. § 13–604(B). However, defendant's sentence

## 2. *The Court of Appeals Opinion*

Division Two of the court of appeals held that defendant's sentence of 25 years for selling marijuana to a 14–year–old did not constitute cruel and unusual punishment in the following two-paragraph analysis:

Certain offenses are defined by A.R.S. § 13–604.01 as "dangerous crimes against children" and the statute mandates an enhanced punishment for these offenses. Selling drugs to a minor under the age of 15 is one of these crimes. The trial court aggravated the sentence and mandated a term of 25 years to be served without possibility of parole. Appellant contends that a proportionality analysis like that conducted in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) would result in the conclusion that his sentence is unconstitutionally severe. We do not agree. Pursuant to A.R.S. § 13–604.01(A) the defendant is required to be sentenced to a presumptive term of imprisonment for 20 years and under subsection D of the same statute this sentence can be increased up to 25 years pursuant to A.R.S. § 13–702(D). The trial judge imposed the additional five-year sentence because of the defendant's lengthy criminal record. A.R.S. § 13–604.01(E) provides that a person sentenced for a dangerous crime against children in the first degree is not eligible for parole.

In *State v. Crego*, 154 Ariz. 278, 742 P.2d 289 (App.1987) and *State v. Byrd*, 160 Ariz. 282, 772 P.2d 1135 (App.1988), we applied the *Solem* test to A.R.S. § 13–604.01 and determined that the sentences mandated were not unconstitutional. For the reasons set forth in the latter two cases, we affirm the sentence here.

*State v. Jonas*, 162 Ariz. 32, 34, 780 P.2d 1080, 1082 (App.1989).

## 3. *Cruel and Unusual Punishment: The Solem v. Helm Test*

The eighth amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The eighth amendment applies to the states through the fourteenth amendment. *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

■ The United States Supreme Court has enunciated a 3–prong objective test to determine if a sentence is so disproportionate to the crime for which it is imposed that it constitutes cruel and unusual punishment. *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). First, we must examine the gravity of the offense and the harshness of the penalty; second, we compare sentences imposed on other criminals in the same jurisdiction for more serious crimes; and third, we compare sentences imposed in other jurisdictions for the same crime. *Solem*, 463 U.S. at 292, 103 S.Ct. at 3010. No one factor is controlling in determining proportionality, but the combination of factors makes the analysis possible. *Solem*, 463 U.S. at 291 n. 17, 103 S.Ct. at 3010 n. 17. In *Solem*, a defendant who was previously convicted of nonviolent felonies was sentenced to life imprisonment without parole for passing a fraudulent $100.00 check. The Supreme Court found, under the 3–prong analysis, that the sentence was disproportionate to the crime and violated the eighth amendment.

In this case, defendant challenges the application of the statute imposing punishment for "dangerous crimes against children," A.R.S. § 13–604.01, as applied to the facts of his case. He concedes that the statute may be validly applied to other crimes against children for other offenses, and thus does not challenge the constitutionality of the statute on its face.

---

for transferring marijuana to a minor was not enhanced by his prior conviction for theft because that offense was not a "predicate felony" pursuant to A.R.S. § 13–604.01(K)(2). We note that, although the trial court correctly sentenced defendant within the statutory range for a first offense under § 13–604.01, the judgment erroneously classifies the offense as "repetitive." We therefore modify the written judgment to reflect the nonrepetitive nature of defendant's conviction of transferring drugs to a minor. *See* A.R.S. § 13–4037.

We note that A.R.S. § 13–604.01 previously has withstood eighth amendment attacks in the context of crimes against children involving child molestation or sexual offenses. *See State v. Taylor*, 160 Ariz. 415, 773 P.2d 974 (1989) (aggregate sentence of 2,975 years for 85 counts of crimes against children not cruel and unusual punishment); *State v. Byrd*, 160 Ariz. 282, 772 P.2d 1135 (App.1988); *State v. Smith*, 156 Ariz. 518, 526, 753 P.2d 1174, 1182 (App. 1987); *State v. Crego*, 154 Ariz. 278, 280, 742 P.2d 289, 291 (App.1987). We must now decide whether the statute withstands eighth amendment scrutiny [2] under the particular facts of this case, involving the sale of a small quantity of marijuana to a 14–year–old child.

a. *Gravity of the Offense and Harshness of the Penalty*

█ Under *Solem*, the gravity of the offense is determined by the type of harm threatened or inflicted and the level of defendant's culpability. 463 U.S. at 292, 103 S.Ct. at 3010. We measure the type of harm by the seriousness of the crime, whether the crime was committed against a person or property, and whether the crime was violent in nature. *Solem*, 463 U.S. at 292–93, 103 S.Ct. at 3010–11.

In this case, defendant's offense involved the sale of a prohibited drug. *See* A.R.S. § 13–3405. Drug abuse has been recognized as "one of the most serious problems confronting our society today." *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 109 S.Ct. 1384, 1395, 103 L.Ed.2d 685 (1989).

Defendant's crime was also one defined by our legislature as a "dangerous crime against children." *See* A.R.S. § 13–604.01. In 1987 the legislature specifically added the crime of "involving or using minors in drug offenses" to the list of crimes considered dangerous when committed against children. *See* A.R.S. § 13–604.01(A), (K)(1)(m), added by Laws 1987, Ch. 307, § 4; A.R.S. § 13–3409, added by Laws

1987, Ch. 307, § 24. This court long ago recognized the particular seriousness of crimes that involve children and drugs:

It is true that the sentence imposed upon the defendant is severe. However, the social, economic, and moral fabric of the state is constantly threatened by those unscrupulous individuals who turn minors into spineless creatures craving for narcotics.

*State v. Valenzuela*, 101 Ariz. 230, 233, 418 P.2d 386, 389 (1966). Other courts have also recognized that a drug sale to a child is "significantly more culpable" than a sale to an adult. *See In re Flores*, 58 Cal.App.3d 222, 225, 128 Cal.Rptr. 847, 849 (1976); *People v. Carbonie*, 48 Cal.App.3d 679, 686, 121 Cal.Rptr. 831, 834 (1975) (higher penalties justified "to discourage adults from apprenticing minors in the drug trade"). In a similar case, the California court of appeal reasoned:

Here, the mandatory minimum term is but a means to the ultimate end of protecting children from those adults who might otherwise be tempted to involve them in drug traffic. Indeed, the need for such a sanction seems particularly acute when we consider the fact that society's policy of leniency toward minors has the unfortunate side effect of making them ideal retail outlets in a narcotics distribution scheme.

*Carbonie*, 48 Cal.App.3d at 686–87, 121 Cal.Rptr. at 834–35. We also agree with that court that "[i]n the hierarchy of baseness of crimes involving drug traffic, the sale or furnishing of drugs to minors ranks at the very top." *In re Flores*, 58 Cal. App.3d at 226, 128 Cal.Rptr. at 850.

We disagree with the dissent that this victim "was not an innocent corrupted by defendant." The record clearly discloses that this was the victim's first experience with drugs; he testified he had never been around or smoked marijuana in the past, and that the experience "got me dizzy." He also testified that defendant offered

---

**2.** Because defendant has not argued on review that the protection against cruel and unusual punishment would be any greater under the Arizona Constitution analog to the eighth amendment of the federal Constitution, *see* Ariz. Const. art. 2, § 15, we do not address that issue. Our review is limited to defendant's eighth amendment claim.

him marijuana for the stolen gun. Furthermore, we do not consider the fact that the victim had a juvenile record for non-drug related offenses to be either relevant or mitigating in our consideration of the seriousness of a crime that involves the introduction of drugs into the life of a 14–year–old, as does the dissent.

Additionally, defendant's conduct was an intentional offense against a person, not property, which makes it a more serious crime. Although the offense appears on its face to be nonviolent, "the presence or absence of violence does not always affect the strength of society's interest in deterring a particular crime or in punishing a particular criminal." *Rummel v. Estelle*, 445 U.S. 263, 275, 100 S.Ct. 1133, 1140, 63 L.Ed.2d 382 (1980). Indeed, other courts have rejected the argument that drug-dealing can be compared to the nonviolent crime of passing bad checks involved in *Solem v. Helm:*

> Drug dealing cannot be said to be as nonviolent as writing a bad check. Even ignoring the violence typically associated with narcotics operations, heroin dealing can readily lead to violence, theft, robbery, or the like on the part of a buyer to support his habit.

*United States v. Ortiz*, 742 F.2d 712, 715 (2d Cir.1984); *see also United States v. Klein*, 860 F.2d 1489, 1497 (9th Cir.1988). In this case, the record indicates that defendant implicitly encouraged the juvenile victim's drug use and burglary attempts by promising him more drugs in lieu of money for the sale of the stolen gun. Under these facts, we will not ignore the potential connection between drug use and violence by classifying this a "nonviolent" crime to lessen its gravity within the context of the *Solem* analysis. *See In re Flores*, 58 Cal. App.3d at 228, 128 Cal.Rptr. at 851 (sale of heroin to a minor cannot be classified as nonviolent because "it possesses the potential to cause the commission of innumerable acts of violence....").

Defendant concedes in his petition for review that "sale of marijuana to a minor is a serious act of misconduct," but argues that the seriousness of that crime does not justify a sentence of 25 years without possibility of parole when the sale involved only one marijuana cigarette. However, it is not the function of this court to engage in determining what minimum amount of marijuana need be involved in a "serious" offense; that line-drawing function is properly one for the legislature. *See Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (fact that defendant stole only a "small" amount of money did not make his sentence disproportionate). The Arizona legislature, by enacting A.R.S. § 13–3409, has already determined that sale of *any* amount of marijuana to a minor under 15 years old is a serious crime. If this statute "makes a mockery of the law and creates an aura of disrespect," as the dissent contends, it is for the legislature, and not this court, to correct.

After weighing the seriousness of the crime of transferring an illegal drug to a minor under 15 years old, we do not consider a 25–year prison sentence to be excessively harsh. We note that other sentences of the same or greater duration have been upheld for similar crimes. *See, e.g., Hutto v. Davis*, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (40–year sentence for possession of less than 9 ounces of marijuana was not cruel and unusual punishment); *Pickard v. State*, 94 Nev. 681, 585 P.2d 1342 (1978) (mandatory life sentence for selling less than one ounce of marijuana to a minor was not cruel and unusual punishment).

■ However, defendant also argues that the defect in application of the sentencing provisions of A.R.S. § 13–604.01 to the circumstances of his conviction is not merely the mandatory minimum term of imprisonment; he notes that he is not afforded any possibility of parole, and that the statute robs the court of any discretion to consider the individual facts of a particular case and the defendant's personal culpability. The state acknowledges that the length of defendant's sentence in this case was the result of "several analytically separate factors," including: (1) the presumptive term of 20 years required by A.R.S. § 13–604.01(A); (2) the additional 5 years

added because of aggravating factors pursuant to A.R.S. § 13–702; (3) the unavailability of parole under § 13–604.01(E); and (4) the mandatory consecutive terms imposed by A.R.S. § 13–604.01(J). Thus, in this case the severity of the sentence involves more than just the imposition of a prison term of 25 years for the crime.

We have previously held that the mandatory nature of a sentence does not render it disproportionate. *State v. Day*, 148 Ariz. 490, 715 P.2d 743 (1986). In this case, the trial court retained discretion to consider defendant's personal circumstances in mitigation and aggravation and sentenced him within the statutory range of 15 to 25 years for this offense. *See* A.R.S. §§ 13–604.01(D), –702. This was not a case in which the court felt constrained by the mandatory minimum sentence to give defendant a harsher sentence than he deserved; rather, here the court used its statutory discretion to give defendant the *maximum* penalty allowed.

■ We also do not find the consecutive nature of the sentences to be a factor rendering defendant's second sentence disproportionate to his crime. A defendant has no constitutional right to concurrent sentences for two separate crimes involving separate acts. *State v. Wesley*, 131 Ariz. 246, 640 P.2d 177 (1982); *State v. Young*, 106 Ariz. 589, 480 P.2d 345 (1971). We therefore do not consider the fact that defendant must serve one sentence for a separate crime before beginning the other as a factor that disproportionately lengthens the second sentence.

Whether the sentence precludes the possibility of parole, however, is a factor in determining its severity. *Solem*, 463 U.S. at 297, 103 S.Ct. at 3013. The absence of parole, in itself, however, does not make a sentence disproportionate. *See Solem*, 463 U.S. at 297 n. 24, 103 S.Ct. at 3013·n. 24 ("We raise no question as to the general validity of sentences without possibility of parole"). In this case, the absence of parole availability merely requires us to realistically consider ·that defendant will serve the entire 25–year term as punishment for his crime instead of a lesser sentence.

Under the facts of this case, we do not find this 25–year sentence excessive. The record indicates defendant's lengthy prior criminal record, including prior crimes involving children as well as violent offenses, his inability to benefit from alternatives to incarceration, his threats to harm those involved in the prosecution of his case upon his release, and his unwillingness to cooperate with the criminal justice system. Under these circumstances, and considering the seriousness of the crime, we do not find this penalty to be disproportionately harsh under the first prong of the *Solem* test.

b. *Sentences    Imposed    for    Other    Crimes in Arizona*

The second prong of *Solem* involves the inquiry whether criminals in Arizona who commit more serious crimes receive less severe sentences than this defendant. 463 U.S. at 292, 103 S.Ct. at 3010. The legislature has determined that dangerous crimes against children are among the most serious crimes possible. In applying this prong, the court of appeals has often compared other dangerous crimes against children to conclude that a sentence "is not disproportionate when compared with other sentences imposed upon similarly situated defendants in Arizona," because "[a]ll persons convicted of offenses against children such as child molestation, aggravated assault, sexual exploitation, child abuse, or kidnapping, are subjected to the penalties which were imposed upon appellant." *State v. Crego*, 154 Ariz. at 280, 742 P.2d at 291; *see also State v. Smith*, 156 Ariz. at 526, 753 P.2d at 1182 ("all similarly situated defendants who commit multiple dangerous crimes against children fall within the same range of sentencing, and all must serve their sentences in consecutive sequence"). However, we believe the inquiry must be broader than simply comparing all crimes involving minors under 15 years old punishable under the statute that is presently challenged as imposing cruel and unusual punishment. To the extent that *Crego* and *Smith* limited their inquiry to crimes    punishable    under    A.R.S.

§ 13–604.01, we disapprove of their analyses.

■ In comparing the punishments for more serious crimes, we consider what the punishment would be for a criminal with defendant's prior criminal history. Although defendant's sentence for transferring marijuana to a minor could not be enhanced by his prior convictions because they did not constitute predicate offenses, his prior felony convictions could enhance his sentence for other serious crimes. *See generally* A.R.S. § 13–604. For example, if this defendant were charged with sale of marijuana in a quantity much larger than that involved here, he would be convicted of a class 2 felony; if the state alleged his prior adult felony convictions, he could be sentenced to a maximum term of 28 years in prison, ineligible for release until two-thirds of the sentence was served. *See* A.R.S. § 13–3405(B)(9), –(C); A.R.S. §§ 13–701, –702, –604(B). Other class 2 felonies

have similarly long sentences for recidivists when the court finds aggravating circumstances as extensive as those shown by defendant's record.[3] For example, the following serious crimes have maximum sentences ranging from 28 years for a nondangerous offense to 35 years for a dangerous offense, pursuant to A.R.S. § 13–604(G): sexual assault, A.R.S. § 13–1406; armed robbery, A.R.S. § 13–1904; and kidnapping, A.R.S. § 13–1304. *See State v. Byrd,* 160 Ariz. 282, 772 P.2d 1135 (App.1988). We thus do not find defendant's sentence of 25 years without possibility of early release to be disproportionate to the punishments Arizona imposes for more serious crimes, under the second prong of the *Solem* test.

### c. *Sentences for the Same Crime in Other Jurisdictions*

The third prong of the *Solem* test involves a comparison of the punishment im-

**3.** The dissent misunderstands our use of defendant's prior criminal history. Although, as we have previously pointed out, defendant's prior felonies were not used on this count to enhance the range of penalties, they could have been used to enhance the potential sentences he would have faced for this crime in other jurisdictions, or for more serious felonies in this jurisdiction. We therefore compare what a defendant with similar prior felony convictions would face for this same crime in other states. We have not considered defendant's other juvenile crimes as part of his recidivist record, although those crimes properly could be considered in aggravation, not enhancement.

In this case, the record clearly shows that defendant was an adult recidivist. At trial, he admitted conviction as an adult in Cochise County Superior Court Cause 11862, on April 30, 1986, for theft, a class 5 felony, less than a month before his 20th birthday. This conviction is recidivist pursuant to A.R.S. § 13–604(B). His other adult conviction as a result of this trial, for trafficking in stolen property, a class 2 felony, is also recidivist pursuant to A.R.S. § 13–604(H), and the offense occurred after defendant's 21st birthday. Defendant's presentence report indicates that his robbery and assault convictions in New York were considered "adult" convictions, for the following reasons:

Although sentenced as a "youthful offender" in the state of New York, an individual is treated as an adult at the age of seventeen in that state. According to the New York authorities, the youthful offender program provides offenders up to age nineteen to be placed on the program. If an individual suc-

cessfully completes a probationary period, the charge is expunged from his record. New York authorities indicate that after the defendant served a year in their jail facility, he was ordered to return to Arizona and supervision was transferred to the State of Arizona as well.

. . . .

According to [the Arizona probation officer] who handled the case, the defendant was uncooperative in regards to reporting and other requirements of probation and [the officer] eventually closed the case out and returned it to New York. . . .

We therefore consider this defendant's record to show 4 adult felony convictions. However, even if we were to disregard the New York felony convictions as recidivist, this defendant's record clearly shows two adult Arizona prior felonies. The dissent fails to take into consideration any of these prior convictions or the other aggravating factors on this record in its comparison of sentences for this crime in other jurisdictions or in comparing sentences for other, more serious crimes in this jurisdiction. Indeed, the dissent prefaces its comparison of potential sentences for other crimes with the disclaimer, "[a]bsent aggravating circumstances" although this record is replete with aggravating circumstances and a record as a recidivist. Although it is true that a first felony offender without defendant's record might have faced lesser sentences for this crime in other jurisdictions and for more serious crimes in this jurisdiction, a recidivist with a record like defendant would face the maximum sentences we compare here.

posed for the same crime in other jurisdictions.

The state has included in its answering brief a lengthy matrix of the sentencing provisions for sale of marijuana in the other 49 states and the District of Columbia. A review of that information reveals that 35 of the other 50 jurisdictions listed also have more stringent penalties for sale of marijuana to a minor than sale to an adult. Additionally, at least 22 jurisdictions could have sentenced a defendant with 4 prior felony convictions and defendant's background to a maximum term of 25 years or more for the same crime, some of them up to life sentences.[4]

However, this comparison again is made more difficult in our analysis by the fact that A.R.S. § 13–604.01 precludes the possibility of parole during the entire term of the sentence. Thus, as a practical matter, defendant's 25–year sentence is among the harshest in the nation, because he will not be eligible for release until every day of his sentence is served.

We note, however, that this factor alone will not cause a sentence to be considered cruel and unusual under the *Solem* test. A state's deviation from the punishment chosen by a majority of other states does not necessarily result in a violation of the eighth amendment. *Spaziano v. Florida,* 468 U.S. 447, 464, 104 S.Ct. 3154, 3164, 82 L.Ed.2d 340 (1984). Providing parole is an act of "executive grace" that is not within the "normal expectation" of those that

traffic in narcotics, unlike the defendant in *Solem,* who may have had a "normal expectation" of parole for passing a bad check. *United States v. Klein,* 860 F.2d 1489, 1497–98 (9th Cir.1988). The nonexistence of parole provisions in mandatory minimum sentences historically has been upheld as constitutional. *See Schick v. Reed,* 419 U.S. 256, 267, 95 S.Ct. 379, 385, 42 L.Ed.2d 430 (1974); *United States v. Valenzuela,* 646 F.2d 352, 354 (9th Cir. 1980); *Moore v. Cowan,* 560 F.2d 1298, 1302–03 (6th Cir.1977); *United States v. Bergdoll,* 412 F.Supp. 1308, 1319 (D.Del. 1976). We therefore do not find defendant's sentence to be cruel and unusual simply because it does not provide the possibility of parole.[5]

The Ninth Circuit recently upheld another Arizona sentencing scheme against an eighth amendment attack, even though it resulted in the harshest penalties for recidivists in the nation:

> The fact that one state has the distinction of setting the most stringent prison sentence for a particular crime does not automatically render such punishment "grossly disproportionate" to the offense or to the punishment dictated by other states. *Rummel,* 445 U.S. at 281 [100 S.Ct. at 1143]. As the Supreme Court has stated, "[a]bsent a constitutionally imposed uniformity inimical to traditional notions of federalism, some state will always bear the distinction of treating particular offenders more severely than

---

**4.** These are the maximum terms in those states: Alabama, with 3 priors, life without parole, Ala. Code § 20–2–73; Colorado, with 3 priors, natural life, Colo.Rev.Stat. §§ 16–13–101, 18–18–106; Delaware, with 3 priors, up to life, Del.Code Ann. tit. 11 § 4214; District of Columbia, with 2 priors, natural life, D.C.Code Ann. § 22–104(a); Florida, with 3 priors, 30 years, Fla.Stat. § 893.13(1)(c); Idaho, with 2 priors, life, Idaho Code § 19–2514; Indiana, 2 to 4 years, with a prior, add 30 years, Ind.Code Ann. §§ 35–48–4–10, 35–50–2–7; Kansas, with 2 priors, 30 years, Kan.Stat.Ann. § 21–4504; Louisiana, 60 years; with 2 priors, life without parole, La.Rev.Stat. Ann. §§ 40:981(C), 15:529.1; Mississippi, if one of two priors is violent, life without parole, Miss.Code Ann. § 99–19–83; Missouri, life, Mo. Rev.Stat. §§ 195.017, 195.200(1)(4); Montana, life, Mont.Code Ann. § 45–9–101(5)(d); Nebraska, with priors, 60 years, Neb.Rev.Stat.

§ 29–2221; Nevada, second conviction of sale to a minor, life, Nev.Rev.Stat. § 453.334; New York, with 2 priors, life, N.Y.Penal Law §§ 221.-50, 70.00; Rhode Island, with 2 priors, 25 years, R.I.Gen.Laws § 12–19–21; Texas, 99 years or life, Tex.Civil Code Ann. § 4.01(b); Utah, life, Utah Code Ann. § 58–37–8, § 76–3–203; Vermont, 25 years, Vt.Stat.Ann. tit. 18 § 4224(h); with 3 priors, natural life, Vt.Stat.Ann. tit. 13 § 11; Virginia, 50 years, Va.Code Ann. § 18.2–255(A); West Virginia, with 2 priors, life, W.Va.Code § 61–11–18; and Wyoming, with 3 priors, life, Wyo.Stat. § 6–10–201.

**5.** We also disagree with the dissent that the cost of defendant's incarceration as a result of the nonavailability of parole has any relevance in an eighth amendment analysis.

any other state." *Id.* at 282, 100 S.Ct. at 1143.

*Cocio v. Bramlett,* 872 F.2d 889, 897 (9th Cir.1989). We similarly find that defendant's 25–year sentence without possibility of early release, for transferring marijuana to minors, although harsh, is not cruel and unusual as violative of the eighth amendment under the third prong of the *Solem* test.

## CONCLUSION

We hold that defendant's 25–year sentence for the sale of one marijuana cigarette to a 14–year–old, to be served without parole and consecutive to his 21–year sentence for trafficking in stolen property, is not disproportionate to his crime, and thus does not constitute cruel and unusual punishment under the facts of this case.[6] His sentence pursuant to A.R.S. § 13–604.01 does not violate the eighth amendment; it is therefore affirmed as modified.

GORDON, C.J., and CAMERON and MOELLER, JJ., concur

FELDMAN, Vice Chief Justice, dissenting.

I must dissent because I believe the sentence imposed is so disproportionate to the facts that it violates the eighth amendment. In finding the sentence proportionate, the majority misapprehends *Solem*'s analytical framework.

## A. The Gravity of the Offense vs. the Harshness of the Penalty

Just today this court recognizes that we must measure the gravity of the offense by the actual facts of the case. *See State v. Bartlett,* 164 Ariz. 229, 234, 792 P.2d 692, 697 (1990). The court states that "we must examine the type of harm threatened or inflicted and the level of defendant's culpability, measured by the seriousness of the crime, against whom it was committed, and its level of violence." *Id.* The majority opinion in this case fails to meet these criteria.

### 1. Seriousness of the Offense

All but two of the cases the majority cites to prove this crime is serious involved the use of a minor in drug trafficking or the sale or use of heroin, not marijuana.[7] How can the court evaluate the specific facts of this case when it uses authority that deals with offenses that are factually different and more grave?

The majority discusses two cases, *Pickard v. State,* 94 Nev. 681, 585 P.2d 1342 (1978), and *Hutto v. Davis,* 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982), that do involve marijuana use. Both were decided before *Solem* and both are readily distinguishable. *Pickard* dealt with a statute that mandated life imprisonment but allowed parole after seven years. Nonetheless, the court stated:

> Although it is distinctly arguable that appellant's sentence in this case is "grossly out of proportion to the severity of the crime," this court would feel unjustified in so concluding, upon the record before us.
>
> Accordingly, although we affirm appellant's conviction, we have ordered appel-

---

**6.** The dissent suggests that it would "reduce" defendant's sentence to a more proportionate one pursuant to this court's authority to reduce an otherwise legal, but excessive, sentence. *See* A.R.S. § 13–4037. However, the dissent does not explain exactly what sentence it considers to be proportionate in this case. Alternatively, if we utilized the remedy we today chose in *Bartlett,* we would have to hold this sentencing statute unconstitutional as applied to defendant, and remand for defendant's resentencing as a class 2 felon outside the dangerous crimes against children statute. *See State v. Bartlett,* 164 Ariz. 229, 241, 792 P.2d 692, 704 (1990); A.R.S. § 13–3409. However, the state could

then seek enhancement for defendant's two prior Arizona felonies pursuant to A.R.S. § 13–604, placing defendant as a third offender into a sentencing range of from 14 to 28 years without possibility of early release for this offense for which he was already sentenced in a 15 to 25 year range as a nonrecidivist.

**7.** *See, e.g., State v. Valenzuela,* 101 Ariz. 230, 418 P.2d 386 (1966) (heroin); *In re Flores,* 58 Cal. App.3d 222, 128 Cal.Rptr. 847 (1976) (sale of heroin to a minor with intent to cause addiction, with one prior felony conviction alleged); *People v. Carbonie,* 48 Cal.App.3d 679, 121 Cal. Rptr. 831 (1975) (apprenticing minor in drug trade).

lant's case placed on the agenda for consideration of the Nevada Board of Pardons.

585 P.2d at 1344. *Pickard* thus provides no support for the court's holding that the eighth amendment permits a defendant who sold one marijuana cigarette to be imprisoned for twenty-five years, to be served day-by-day consecutive to any other sentence imposed.

*Hutto* dealt with a dealer, a defendant who had possession of nine ounces of marijuana with intent to distribute. Furthermore, *Solem* rejected *Hutto*'s basic premise that the eighth amendment does not apply to prison terms. *See* 463 U.S. at 288, 103 S.Ct. at 3009. *Hutto* provides no authority for finding the sentence in this case proportionate.

The majority also incorrectly includes defendant's previous record when analyzing the gravity of the offense. The focus should be "on the principal felony—the felony that triggers the [sentence]—since [defendant] already has paid the penalty for each of his prior offenses." *Solem,* 463 U.S. at 296 n. 21, 103 S.Ct. at 3013 n. 21. Defendant paid his penalty for being a repetitive offender on the "fencing" charge. He does not meet the statutory definition of a repetitive offender (A.R.S. § 13–604) on the marijuana charge, and his record should not be used to determine the seriousness of the offense.[8]

### 2. Harm to the Victim

While sale of marijuana to a minor is a serious offense, the young "victim" in this case was not an innocent corrupted by defendant. As in *Bartlett,* the victim was close to the maturity line the legislature has drawn for imposing less severe sentences. He was not only a willing participant, but admitted that he requested the marijuana.[9] Moreover, he was an accomplished thief who admitted to twenty-one counts of crime involving six burglaries, including the theft of the gun he asked defendant to "fence" for him.

The record does not even hint that defendant involved the minor in "drug traffic," at 247, 792 P.2d at 710 (citing *People v. Carbonie,* 48 Cal.App.3d 679, 121 Cal.Rptr. 831, 834–835 (1975)), or in "heroin dealing," at 248, 792 P.2d at 711 (citing *United States v. Ortiz,* 742 F.2d 712 (2d Cir.1984)). The record does not indicate that defendant in any way encouraged the juvenile in drug use or burglary. A realistic view of harm to the victim does not add to defendant's culpability in this case. *See Bartlett,* 164 Ariz. at 235, 792 P.2d at 698.

### 3. Violent Nature of Offense

The majority attempts to shoehorn the facts of this case into its view of the gravity of the offense by comparing the sale of one marijuana cigarette to a violent crime. The majority states that "we will not ignore the potential connection between drug use and violence by classifying this a 'nonviolent' crime to lessen its gravity within the context of the *Solem* analysis." At 248, 792 P.2d at 711. Presumably, somehow, the crime is thus to be classified as "violent." The majority does not explain how.

### B. Sentences Imposed for Other Crimes in Arizona

The unconstitutionality of this sentence is apparent when we look at other sentences required by Arizona criminal law.

---

8. The trial judge was obviously confused as to the effect of defendant's priors as he erroneously classified the marijuana offense as repetitive when he imposed the twenty-five year sentence. *See* at 245–246 n. 1, 792 P.2d at 708–709 n. 1. Furthermore, the state may have been unable to allege defendant's "4 prior adult felony convictions" (at 250, 792 P.2d at 713) under a different statute because defendant was sentenced for three of them in New York as a "youthful offender" and the record is not clear as to whether these offenses have been expunged.

9. The victim testified as follows:
   Q. As to these purchases of cigarettes, who suggested you buy the cigarettes?
   A. I did.
   Q. You actually asked to buy them?
   A. Yes, I did.
   Q. What was done with the cigarettes?
   A. We smoked them.
   Reporter's Transcript, Feb. 10, 1988, at 86.

Defendant could be sentenced to the same maximum twenty-five year term if he had been convicted of committing the most reprehensible sexual crimes with children, such as sexually assaulting a child or using the child as a prostitute. *See* A.R.S. § 13–604.01(A); *see also State v. Benefield*, No. 2–CA–CR–89–0259 (Ariz.Ct.App. 1989) *(rev. denied*, Mar. 6, 1990) (twenty-year sentences affirmed for acts of anal and vaginal rape of three-year-old girl). As the court stated in *Bartlett*, more serious crimes than this, "such as aggravated assault, child molestation, child abuse or kidnapping, are subject to a lesser minimum sentence. . . ." 164 Ariz. at 236, 792 P.2d at 699.

If defendant had been convicted of second degree murder of this child "victim," the maximum sentence he could receive would be twenty-five years. Absent aggravating circumstances, even if defendant had killed an adult in a premeditated, first degree murder, he would have been eligible for parole in twenty-five years. A.R.S. § 13–703(A); *see also Bartlett*, 164 Ariz. at 236–237, 792 P.2d at 699–700 (discussing incongruity of sentencing for potentially more serious crimes). If he had been a killer convicted of second degree murder of an adult, he would receive at most an aggravated sentence of twenty years. A.R.S. § 13–710. Only upon his commission of another second degree murder would defendant be subject to the same sentencing range (fifteen to twenty-five years) as he is today for the sale of one marijuana cigarette. *Id.* If he committed a third, second degree murder, he would receive life, but still would be eligible for parole in twenty-five years. A.R.S. § 13–604(N).

The same disproportionality is apparent when we examine sentences for drug offenses. Even the most serious drug offenders are treated no more harshly than this defendant. For instance, life imprisonment was imposed on a cocaine dealer arrested while on probation for a prior drug offense. *See State v. Waits*, 163 Ariz. 216, 786 P.2d 1067 (Ct.App.1989) *(rev. denied*, Mar. 6, 1990). The court of appeals, in affirming the sentence, was careful to point out that defendant was not merely convicted of the sale of a narcotic drug, but that the state had alleged and proved defendant had two prior felonies and that he was convicted pursuant to A.R.S. § 13–604.02(A) as a defendant who had committed a class 2 felony while on probation. *Id.* The cocaine dealer will be eligible for parole in twenty-five years.

Thus, even a cursory glance at Arizona law makes it apparent that defendant's punishment is grossly disproportionate when compared to punishment for other, much more serious crimes in this jurisdiction.

### C. Sentences in Other Jurisdictions

In its analysis of *Solem*'s third prong, the majority concedes that a twenty-five year consecutive sentence without possibility of parole is disproportionate when compared to that which could have been imposed in any other jurisdiction. It even acknowledges that the sentence is "among the harshest in the nation." At 251, 792 P.2d at 714. Actually, it *is* the harshest. Arizona is the *only* state that would or could incarcerate a first-time seller of one marijuana cigarette to twenty-five years in prison without parole to be served consecutively to any other sentence imposed. The majority consoles itself by reflecting that some state must have the distinction of being the most severe. At 251, 792 P.2d at 714; *cf. Bartlett*, 164 Ariz. at 240, 792 P.2d at 703. The truth is that compared to other states, this sentence is constitutionally disproportionate.

The sentence for the marijuana offense is made even more disproportionate because it is imposed consecutively. The majority claims we are *not* to "consider the fact that defendant must serve one sentence for a separate crime before beginning the other as a factor that disproportionately lengthens the second sentence." At 249, 792 P.2d at 712. We should not ignore the consecutive nature of the sentence because it is the sentencing statute itself that mandates that "[t]he sentence imposed . . . shall be consecutive to any other sentence imposed on the person at

any time." *See* A.R.S. § 13–604.01(J). Surely when a sentence must be served without parole and consecutively to any other, we must consider that factor on the question of severity.

## CONCLUSION

I do not underestimate the problems drug use creates in this state. In enacting A.R.S. § 13–604.01(K)(1)(m), the legislature has attempted to protect our children from the malevolent influence of those who would involve them in drug trafficking or use. There are undoubtedly many cases in which the aggravated penalty the legislature has prescribed will be properly imposed. This is not one of them.

The bottom line is simply this: for selling one marijuana cigarette for one dollar to a young but experienced burglar seeking to sell a stolen gun, this defendant must serve twenty-five years in state prison without possibility of parole, consecutive to the sentence for attempted sale of the gun stolen by the burglar, for a total of forty-six years. Defendant is treated more severely than the law would treat a killer, a kidnapper, a sexual abuser, or an anal rapist.

The majority spends many pages attempting to rationalize this result and somehow concludes that it is constitutionally proportionate, even though it could not happen in any other state in the union. This court has turned Arizona into a minority of one.

As far as defendant is concerned, the sentence is so harsh that it is manifestly unjust. Our pity, however, must be reserved for the taxpayers of this state. The court has sentenced them to pay over $1.5 million [10] to imprison this defendant for forty-six years.[11]

The punishment imposed on defendant was the maximum possible under the statute. Given its duration, the lack of parole possibility, and consecutive imposition of the twenty-five year sentencing, bringing the total to forty-six years, this sentence is disproportionate and so severe that it shocks the conscience. This court should therefore reduce the punishment under A.R.S. § 13–4037(B) to one that is not unconstitutionally severe. *See, e.g., Hamilton v. Municipal Court*, 163 Ariz. 374, 788 P.2d 107 (Ct.App.1989) (*rev. denied*, Mar. 27, 1990) (reducing a sentence by vacating the five-day jail term imposed on lawyer).

If this court cannot or does not use the power the legislature has given it under A.R.S. § 13–4037(B), then it must find this disproportionately excessive sentence cruel and unusual under the eighth amendment. Excessive sentences such as the one imposed in this case do not lead to observance of the law. Instead, they make a mockery of the law and create an aura of disrespect.

The majority suggests that the problem is one the legislature should correct. At 248, 792 P.2d at 711. It is wrong. By enacting A.R.S. § 13–4037(B), the legislature of this state gave this court the power and responsibility to correct unjust sentences. The court should exercise that responsibility. By enacting the eighth amendment, the founders of this country created restrictions on legislative action. If courts do not enforce those restrictions, they are meaningless.

### Appendix A

Transcript of Sentencing Hearing, Maricopa County Superior Court, March 7, 1988

THE COURT: I was concerned about the fact that the gun that was the subject of the trafficking in stolen property was not one you stole but one somebody else stole, and it was the witness against you at the trial who was, in fact, responsible for the theft and burglary of that gun. I was also mindful of the fact that

---

**10.** Calculation based on actual figures from Department of Corrections Annual Report for Fiscal Years 1984–1989. Projected costs calculated using a linear forecast methodology by the Research Department of the Administrative Office of the Courts, February, 1990.

**11.** The majority accuses me of arguing that the cost of incarceration is somehow relevant to an analysis under *Solem v. Helm*. Of course, I do not. I consider it relevant only to the use of common sense.

the sale of marijuana in this case was one, perhaps two joints; that it is not a tremendous amount of marijuana involved. So it was with some predisposition toward lenience that I picked this report up and began reading. And I don't think that there is a page in this report, Mr. Jonas, that doesn't tell me that that thinking is just dead wrong.

The record section of this report ... the recitation of criminal offenses ... is rare to find in somebody 21 years of age. It is more often the case that I see people 40 or 50 years old before me that sometimes demonstrate the kind of criminal involvement that you have. And the list, ironically, begins in another state in 1983 and reflects robbery, a violent felony after a violent felony burglary, so the very first offense listed in this report as a youthful offender was propensity for violence and a propensity for disregarding the property rights and safety of other human beings.

The list goes on to show that on more than one occasion, a number of occasions, the criminal offenses that you have been involved in have also involved juveniles. There is minor consumption of alcohol. There is furnishing alcohol to a minor. And in this case itself, the record shows that the weapon that you stole involved minors and that the drug substance that was transferred involved minors, your brother and another. The criminal record also shows that you didn't have a lot of respect for the system, failing to appear in court when you are ordered to do so. Contempt of court for failure to pay fines, revocation of probation for a felony for which you were originally granted probation, threatening and intimidating other people, under-age consumption, and a DUI. The record in and of itself shows shockingly aggravating circumstances.

The circumstances of this offense, just in that they involve juveniles and were separate and distinct from each other, is a sufficient aggravating circumstance and I suppose more than any other shocking aggravating circumstance reflected by this presentence report is ... where I read that during the presentence interview, and I am quoting: He indicated that upon his release he would like to go to Russia as he was not happy with conviction on the instant offense. He also warned, "I hope no one that got me in here is around when I get out. They had better not be around."

That tells me that the people responsible for your being before the court for sentencing today, including perhaps the witness who testified against you, the prosecutor who was responsible for the conviction in this case, perhaps the court itself, may be in actual physical danger when and if you get out of prison. That to me is the most shockingly and seriously important reason for putting you behind bars for as long as the law will permit me to do it.