NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ARLONZO COLEMAN, *Appellant.*

No. 1 CA-CR 15-0194
FILED 9-29-2016

Appeal from the Superior Court in Maricopa County
No.  CR2013-417608-001
The Honorable Teresa A. Sanders, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eliza Ybarra
*Counsel for Appellee*

The Heath Law Firm PLLC, Mesa
By Mark Heath
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Randall M. Howe and Judge Donn Kessler joined.

---

**J O N E S**, Judge:

¶1        Arlonzo Coleman appeals his convictions and sentences for two counts of armed robbery, two counts of kidnapping, one count of burglary in the first degree, one count of unlawful flight from a law enforcement vehicle, and one count of assisting a criminal street gang. For the reasons that follow, we affirm.

## FACTS[1] AND PROCEDURAL HISTORY

¶2        On the evening of April 19, 2013, thirteen-year-old I.G. spent the night at the apartment of her friend, U.M., who was also thirteen. When I.G. first arrived, U.M.'s mother and brother were home. At some point during the evening, however, U.M.'s mother and brother left the girls there alone.

¶3        At approximately 1:00 a.m., the girls heard a knock at the front door. Ignoring I.G.'s plea not to answer it, U.M. opened the door and was confronted by a man holding a gun. U.M. slammed the door, yelled to I.G., and the girls ran and hid in a closet. While huddled in the closet, U.M. called 9-1-1 on her cell phone. Moments later, three or four men burst into the apartment. Afraid the men might hear her, U.M. never spoke to the 9-1-1 operator, but also did not end the call.

¶4        Notwithstanding the girls' silence, the intruders soon found them and ordered them into the living room. All the men had guns. They ordered the girls to search the apartment for "weed." The girls attempted to comply but failed to find anything, and the men became angry and "waved" their guns "around." One man hit each girl in the head with his

---

[1]        We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against the defendant. *State v. Harm*, 236 Ariz. 402, 404 n.2, ¶ 2 (App. 2015) (quoting *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

gun and another man "kicked" U.M. into a cabinet. After ransacking the apartment and failing to find any drugs or money, the men left.

¶5        At 1:23 a.m., Officers Daley and Phillips responded to a radio call for emergency assistance arising from "unknown trouble" at an apartment building. As Officer Daley exited his patrol vehicle and approached the complex, he observed a young man walking down the street, away from the site of the reported emergency. The young man appeared to be looking at his cell phone, but when he glanced up and saw the officers, "he fled full sprint."

¶6        After Officer Daley radioed about the fleeing subject, he chased the man for a few blocks and eventually detained him. Backup officers soon arrived and Officer Daley returned to the apartment complex. As the officer again approached the apartment, he saw a vehicle "reversing out of the complex" and travelling away "at a very high rate of speed." A police helicopter tracked the speeding vehicle until it crashed into a curb. After the collision, the driver and a passenger fled on foot. The helicopter pilot tracked the driver, later identified as Coleman, to a large dirt lot, where he was arrested by Officer Daley. Officers later located the passenger in a residential shed, identified him as Jose Dominguez, and placed him under arrest.

¶7        The State charged Coleman with two counts of armed robbery, two counts of kidnapping, one count of burglary in the first degree, one count of unlawful flight from a law enforcement vehicle, and one count of assisting a criminal street gang. The State also alleged numerous aggravating factors and that the crimes were dangerous.

¶8        At trial, I.G. positively identified Coleman as one of the intruders who broke into U.M.'s apartment. Dominguez testified he, Coleman, and all but one of the other five participants in the home invasion were members of a criminal street gang known as the Broadway Gangsters. He explained that Coleman was the highest ranking gang member involved, and, pursuant to the rules of the gang, the other men were required to respect the gang's hierarchy and follow Coleman's orders or face a "beat down." Dominguez admitted that he, Coleman, and several other gang members planned to commit the home invasion under the belief that there was ten pounds of marijuana and a substantial sum of money in the apartment. Both Dominguez and Coleman were armed with handguns. Dominguez admitted he hit one of the girls with his gun, but only because Coleman instructed him to and he felt compelled to obey Coleman's orders.

He also testified he believed committing the crimes would raise his standing in the gang.

¶9        Detective Robert McKinney testified as a gang expert and explained that gang members elevate their status by participating in criminal activity.  He also testified that a willingness to commit crimes demonstrates gang loyalty and opined that a home invasion committed by several members of a gang is a "gang motivated" crime.

¶10        Coleman testified in his defense.  According to Coleman, on the evening of April 19, 2013, he called Dominguez to pick him up from his girlfriend's party.  Because he had consumed wine, beer, and vodka, Coleman testified he was so drunk he passed out.  When he awoke, he was seated in the passenger seat of a parked vehicle with its engine running.  Noticing the driver's-side door was open, Coleman slid into the driver's seat to close the door when he heard a helicopter overhead.  Just as Coleman slid into the driver's seat, Dominguez jumped in the vehicle and Coleman started driving.  Eventually, the vehicle hit a curb, the driver's air bag deployed, and he and Dominguez ran.  Coleman denied any knowledge of the weapons later found in the vehicle but admitted he previously self-identified as a Broadway Gangster, although he no longer considered himself an active gang member.

¶11        Following a twenty-six-day jury trial, Coleman was convicted as charged.  The jury also found, as an aggravating circumstance, that the victims were under age fifteen at the time of the offenses.  The trial court sentenced Coleman to twelve years' imprisonment for each count of armed robbery and burglary, four and one-half years' imprisonment for unlawful flight from a law enforcement vehicle, ten years' imprisonment for assisting a criminal street gang, and fifteen years' imprisonment for each count of kidnapping.  The court ordered the sentences run concurrently, except the sentences for kidnapping were consecutive to each other and all other counts, for a total cumulative sentence of forty-two years' imprisonment.  Coleman timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1),[2] 13-4031, and -4033(A)(1), (4).

---

[2]        Absent material changes from the relevant date, we cite a statute's current version.

**DISCUSSION**

### I.      Motion to Sever Charges

¶12          Coleman first contends the trial court erred by denying his motion to sever the count of assisting a criminal street gang from the other charges.  We generally review the denial of a motion to sever for an abuse of discretion.  *See State v. Prince*, 204 Ariz. 156, 159, ¶ 13 (2003) (citation omitted).  Because Coleman failed to renew his objection at or before the end of trial, however, we review only for fundamental error.  *See* Ariz. R. Crim. P. 13.4(c) (explaining a defendant must renew a motion to sever offenses "during trial at or before the close of the evidence" or "[s]everance is waived"); *State v. Goudeau*, 239 Ariz. 421, 443, ¶ 54 (2016) (citing *State v. Laird*, 186 Ariz. 203, 206 (1996)).  Under this standard of review, a defendant bears the burden of proving both fundamental error and resulting prejudice.  *State v. Henderson*, 210 Ariz. 561, 567, ¶ 20 (2005) (citations omitted).

¶13          Several months prior to trial, Coleman joined in a co-defendant's motion to sever the count of assisting a criminal street gang from the other charges.  At a hearing on the motion, the trial court noted that evidence of the armed robbery, kidnapping, and burglary charges would necessarily be admitted at a separate trial on the count of assisting a criminal street gang because those were the crimes alleged to have benefitted the Broadway Gangsters.  Defense counsel argued severance was appropriate because Dominguez had denied the crimes were committed for the benefit of the gang.  In response, the State argued that evidence regarding Coleman's gang affiliation was relevant to motive on all the crimes charged and the jury, as fact-finder, should determine whether Coleman intended to benefit the gang when he participated in the home invasion.

¶14          After taking the matter under advisement, the trial court denied the motion to sever, finding all of the charges "arose out of the same conduct and were connected together in their commission."  The court also concluded that Dominguez's statement that the robbery was not committed to benefit the Broadway Gangsters did not "affect th[e] analysis."  Instead, the jurors would "decide whether the State [proved] the charges beyond a reasonable doubt and whether Dominguez's testimony [wa]s credible."

¶15          As set forth in Arizona Rule of Criminal Procedure 13.3(a), joinder of two or more offenses is permissible when they: "(1) [a]re of the same or similar character; or (2) [a]re based on the same conduct or are

5

otherwise connected together in their commission; or (3) [a]re alleged to have been a part of a common scheme or plan." When offenses are properly joined under Rule 13.3(a)(2) or (3), severance is required only if "necessary to promote a fair determination of the guilt or innocence of any defendant of any offense." Ariz. R. Crim. P. 13.4(a); *State v. Miller*, 234 Ariz. 31, 38, ¶ 18 (2013).

**¶16**        Applying these rules, we find no error. The charges against Coleman were properly joined by the trial court pursuant to Rule 13.3(a)(2) because the charges all arose from the same conduct. That is, the armed robbery, kidnapping, burglary, and unlawful flight were the predicate felony offenses underpinning the charge of assisting a criminal street gang. *See* A.R.S. § 13-2321(B) ("A person commits assisting a criminal street gang by committing *any felony offense*, whether completed or preparatory for the benefit of, at the direction of or in association with any criminal street gang.") (emphasis added). Alternatively, the charges against Coleman were properly joined under Rule 13.3(a)(3) because the offenses were part of a common scheme, and the evidence reflects the scheme was motivated, at least in part, to assist a criminal street gang.[3] And, because the charges all stem from a single course of conduct or common scheme, joinder properly placed before the jury the relevant evidence regarding motive and plan formation. Thus joinder, not severance, promoted a fair determination of the offenses. *See* Ariz. R. Crim. P. 13.4(a).

**¶17**        Moreover, Coleman cannot show "compelling prejudice against which the trial court was unable to protect," *see State v. Murray*, 184 Ariz. 9, 25 (1995) (quoting *State v. Cruz*, 137 Ariz. 541, 544 (1983)), where, as here, "the trial court instructed the jury to consider each count separately and explained that the State bore the burden to 'prove each element of each charged crime beyond a reasonable doubt,'" *Miller*, 234 Ariz. at 38, ¶ 18 (quoting *Hausner*, 230 Ariz. at 75, ¶ 48); *accord Goudeau*, 239 Ariz. at 446, ¶ 67 (explaining the defendant could not demonstrate prejudice in the denial of severance because "[w]e presume jurors follow[ed] the court's instructions" to consider each charged offense separately) (citation omitted). *But see State v. Burns*, 237 Ariz. 1, 14-15, ¶¶ 36-39 (2015) (concluding a trial court's denial of a motion to sever a misconduct-involving-weapons charge from murder and sexual assault charges was an abuse of discretion, notwithstanding proper instructions to the jury, because the necessary admission of the fact that the defendant had

---

[3]        Because we find joinder appropriate under Rule 13.3(a)(2) and (3), we need not address Coleman's arguments concerning Rule 13.3(a)(1). *See State v. Hausner*, 230 Ariz. 60, 74, ¶ 44 (2012).

previously been convicted of a felony was both unfairly prejudicial and irrelevant to the other charges). Therefore, we find no error, much less fundamental, prejudicial error, in the denial of Coleman's motion to sever charges.

## II.     Length of Sentence

**¶18**          Coleman further argues the cumulative length of his sentence — forty-two years — is grossly disproportionate to the crimes he committed and violates the constitutional protection against cruel and unusual punishment. Specifically, Coleman contends he was a "passive" participant in a series of crimes in which "no one was seriously hurt," yet his sentence is more onerous than sentences routinely imposed for more severe and violent crimes. We review *de novo* whether a sentence constitutes cruel and unusual punishment. *See State v. Kasic*, 228 Ariz. 228, 231, ¶ 15 (App. 2011) (citing *State v. Dann*, 220 Ariz. 351, 358, ¶ 27 (2009)). Absent some abuse of discretion, we will not disturb a sentence within the statutory range. *State v. Joyner*, 215 Ariz. 134, 137, ¶ 5 (App. 2007) (citing *State v. Russell*, 175 Ariz. 529, 534 (App. 1993)). "An abuse of discretion occurs when the trial court fails to conduct an adequate investigation into the facts relevant to sentencing." *Russell*, 175 Ariz. at 534 (citing *State v. Calderon*, 171 Ariz. 12, 13 (App. 1991)).

**¶19**          The legislature has mandated that the sentence imposed for a dangerous crime against children "shall be consecutive to any other sentence imposed on the person at any time." A.R.S. § 13-705(M) (permitting concurrent sentencing for a dangerous crime against children only when the offense involves child molestation or sexual abuse of a single victim and the other offense is not a dangerous crime against children); *see also State v. Jones*, 235 Ariz. 501, 503 n.1, ¶ 7 (2014) (citing *State v. Tsinnijinnie*, 206 Ariz. 477, 479-80, ¶¶ 11-17 (App. 2003)). The term "dangerous crime against children" includes the act of kidnapping "a minor who is under fifteen years of age." A.R.S. § 13-705(P)(1)(i).

**¶20**          Applying the statute here, Coleman's convictions for armed robbery, burglary, unlawful flight, and promoting a criminal street gang could be served concurrently; however, the sentences for kidnapping were statutorily mandated to be served consecutively, both as to the other counts and each other. A.R.S. § 13-705(M); *see also Jones*, 235 Ariz. at 503, ¶¶ 9, 11. In addition, if a person is convicted of "any felony offense with the intent to promote, further or assist any criminal conduct by a criminal street gang," the presumptive minimum sentence for a class two felony is enhanced by five years. *See* A.R.S. § 13-714. Accordingly, the minimum

sentence authorized by law for armed robbery and first degree burglary, both class two felonies, was increased to twelve years, *see* A.R.S. §§ 13-704(A), -1508(B), -1904(B), and the minimum sentence authorized by law for each count of kidnapping a child under the age of fifteen was increased to fifteen years, *see* A.R.S. § 13-705(D), resulting in a cumulative minimum sentence of forty-two years' imprisonment. Therefore, Coleman received the minimum sentence permitted under Arizona's sentencing scheme, and we find no abuse of discretion.

**¶21**     Turning to the constitutionality of the sentence, the Eighth Amendment to the United States Constitution bars the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition has been applied to lengthy prison sentences, but "noncapital sentences are subject only to a 'narrow proportionality principle' that prohibits sentences that are 'grossly disproportionate' to the crime." *State v. Berger*, 212 Ariz. 473, 475, ¶ 10 (2006) (quoting *Ewing v. California*, 538 U.S. 11, 20, 23 (2003)). Accordingly, "only in 'exceedingly rare' cases will a sentence to a term of years violate the Eighth Amendment's prohibition on cruel and unusual punishment." *Id.* at 477, ¶ 17 (quoting *Ewing*, 538 U.S. at 22).

**¶22**     In reviewing the constitutionality of a sentence, we first determine whether "there is a threshold showing of gross disproportionality by comparing 'the gravity of the offense and the harshness of the penalty.'" *Id*. at 476, ¶ 12 (quoting *Ewing*, 538 U.S. at 28, and citing *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991) (Kennedy, J., concurring in part and concurring in the judgment)). "If this comparison leads to an inference of gross disproportionality," we then "test[] that inference by considering the sentences the state imposes on other crimes and the sentences other states impose for the same crime." *Id.* (citations omitted).

**¶23**     When evaluating whether a sentence is excessive, courts "must accord substantial deference to the legislature and its policy judgments as reflected in statutorily mandated sentences." *Id*. at ¶ 13. In so doing, a court must "determine whether the legislature 'has a reasonable basis for believing that a sentencing scheme advances the goals of its criminal justice system in any substantial way.'" *Id*. at 477, ¶ 17 (quoting *Ewing*, 538 U.S. at 28). "A prison sentence is not grossly disproportionate, and a court need not proceed beyond the threshold inquiry, if it arguably furthers the State's penological goals and thus reflects a 'rational legislative judgment, entitled to deference.'" *Id*. (quoting *Ewing*, 538 U.S. at 30). Additionally, in comparing the gravity of a crime and the severity of the punishment, we consider whether "the sentence imposed for each specific

crime" is excessive — not the imposition of consecutive sentences. *Id.* at 479, ¶¶ 27-28 (quoting *United States v. Aiello*, 864 F.2d 257, 265 (2d Cir. 1988), and citing *State v. Jonas*, 164 Ariz. 242, 249 (1990), then *State v. Davis*, 206 Ariz. 377, 387, ¶ 47 (2003)). An otherwise proportionate sentence does not offend the Eighth Amendment "merely because it is consecutive to another sentence for a separate offense or because the consecutive sentences are lengthy in aggregate." *Id.* at ¶ 28 (citing *Jonas*, 164 Ariz. at 249).

¶24 We do not find a sentence of fifteen years' imprisonment grossly disproportionate to the crime of kidnapping a child under the age of fifteen for the purpose of benefiting a criminal street gang. Nor can we say a sentence of twelve years' imprisonment is grossly disproportionate to the crimes of armed robbery and first degree burglary in furtherance of a criminal street gang. Because the individual sentences are not disproportionate to the crimes and we do not consider the cumulative sentence in the proportionality inquiry, Coleman's sentences were not clearly excessive in violation of the constitutional proscription against cruel and unusual punishment, and we find no error.

## CONCLUSION

¶25 Coleman's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA